MARY A. TACKABERRY v. CITY NATIONAL BANK OF FORT WORTH.

NO. 10.

**1. Assignment for Benefit of Creditors — Schedule — Construction.**—An assignment by a debtor purported to convey all the property owned by her (the grantor), "except such property as is exempt by law from levy and sale under execution." To the assignment was attached a schedule of her indebtedness, as well as an inventory of her property. This embraced her place of business, particularly described, and some other real property, but it did not embrace the property on which she and her family resided. The heading to the last named paper was as follows: "Inventory of property assigned by Mary A. Tackaberry," and to it was attached her affidavit, that "the foregoing inventory or schedule is in all respects just and true, according to the best of my knowledge and belief." The business place was sold by her assignee, and suit was brought by Mrs. Tackaberry against the purchaser. *Held*, that the purpose of the schedule prescribed by the assignment law is manifest, and the heading, which was evidently made for the purpose of identifying it, ought not to be given the effect of a conveyance; and especially so when repugnant to the clause of the deed indicating what was intended to pass by it. The statute recognizes the exemptions in the Constitution and laws in favor of the assigning debtor.

**2. Abandonment of Business Homestead.** — An abandonment of a place of business occurs when the head of the family ceases to use the property for the purpose for which the exemption is given, if he have no present intention to resume that or to pursue some other calling or business on the property. In such condition of facts at the assignment the business homestead passes by the assignment.

**3. Same—Intent.**—A voluntary discontinuance of business ought to be given the same weight on the question of abandonment as is given to a removal from the home; and in the one case, as in the other, the remaining question of fact necessary to be ascertained to determine whether abandonment exists, in a given case, is that of intention.

**4. Assignment — Status of Property — Schedules.**—Where a deed of assignment conveys all the property of the debtor except that not subject to forced sale for payment of debts, and there arises controversy as to what passes by such deed, the status of the property at the time of the assignment is the question to be considered; and upon the court is imposed the burden of ascertaining whether the facts existing when the deed of assignment became operative withdrew the property from liability to execution.

**5. Business Homestead—Abandonment—Fact Case.**—A debtor being insolvent made an assignment of all her property not exempt from execution. She had a home, and a business homestead. The natural effect of the assignment was to close her business. In the schedule of assets the business house was inserted. The testimony showed that the assignor had no fixed intention at any

time either to resume the business she had formerly carried on, or to conduct any other business such as would have continued the exemption of the place of business. *Held*, the finding that the business homestead passed by the assignment was supported by the evidence.

### ON REHEARING.

**6. Practice as to Omissions in Findings of Fact.**—If a plaintiff in error desires a specific finding by the District Court, or the Court of Civil Appeals, he should ask it. In absence of such request the action of the trial court will not be revised when the statement of facts shows evidence upon which the judgment is sustained.

**7. Practice on Error — Uncontroverted Facts.**—While this court on error will not pass upon controverted facts, it may look to such as are uncontroverted and assume that the trial judge gave to them proper weight.

WRIT OF ERROR to Court of Civil Appeals for Second District, in a case from District Court of Tarrant. Tried below before Hon. R. E. BECK-HAM.

This suit was brought on the 2d day of October, 1888, by Mrs. M. A. Tackaberry, against the City National Bank of Fort Worth, Texas, in trespass to try title for two lots and business house thereon, in the city of Fort Worth.

On the 16th day of March, 1888, plaintiff in error made a general assignment of her property, under the statute of Texas, for the benefit of her creditors, appointing George Mulkey assignee.

At the time of the execution of said deed of assignment, and for a number of years prior thereto, she was the owner of the premises in controversy, and in the actual possession and occupancy of same, carrying on her mercantile business therein.

At the time of making said deed of assignment she was a bona fide resident and citizen of the city of Fort Worth, State of Texas, and the head of a family, consisting of herself and her three minor children, residing with her, her husband having previously died.

Upon the execution of the deed of assignment, Mulkey, the assignee, sold and conveyed the premises in controversy to defendant in error. Plaintiff in error brought this suit to recover said premises, on the ground that same was her business homestead at time of the execution of the deed of assignment, and as such was exempt to her, and excepted from the operation of, and did not pass under, said deed of assignment, and that the sale and conveyance of same by said Mulkey, assignee, was without authority and of no effect.

The defendant pleaded a general denial, and set up title by purchase from Mulkey without notice of claim of the plaintiff; pleaded estoppel, etc.

May 15, 1890, trial without a jury, and judgment that plaintiff take

nothing by her suit, and that the defendant was entitled to the property, quieting the title thereto against the plaintiff.

The case was taken by writ of error to the Supreme Court for revision, thence passed to the Court of Civil Appeals for the Second District.

January 3, 1893, the judgment below was affirmed.

Motion for rehearing was overruled, and a writ of error was allowed by Supreme Court.

*Hyde Jennings* and *W. L. Husbands*, for plaintiff in error.—1. A deed of assignment for the benefit of creditors, accompanied with an inventory of property, in which exempt property is mentioned and described, would not operate as a conveyance of such exempt property, said deed of assignment containing a clause expressly excepting from its operation all property exempt from forced sale under execution. 1 Sayles' Civ. Stats., p. 61, art. 65a.

2. The mere fact that one makes a deed of assignment, and thereupon temporarily ceases business, does not, ipso facto, constitute an abandonment of his place of business as his business homestead, and deprive same eo instanti of its character of exempt property so as to at once render it subject to forced sale under execution. Gassoway v. White, 70 Texas, 477; Scheuber v. Ballow, 64 Texas, 166; Wynne v. Hudson, 66 Texas, 1; Bowman v. Watson, 66 Texas, 296; Clift v. Kaufman, 60 Texas, 64; Welborn v. Downing, 11 S. W. Rep., 502.

*Ball, Temple & Ball*, for defendant in error.—1. The inventory attached to the deed of assignment, containing a specific description of the premises in controversy as being one of the items conveyed by said deed, would have the same effect as if said premises had been conveyed, in terms, in the body of the deed. Linn v. Wright, 18 Texas, 337; Keating v. Vaughn, 61 Texas, 522; Burr. on Assign., secs. 128, 134.

2. The deed of assignment (the inventory being read as part thereof) by its terms conveys to the assignee the real estate in controversy. 2 Pars. on Con., 7 ed., *503, *506; United States v. Peck, 102 U. S., 65; 2 Whart. on Con., sec. 659; Whart. on Ev., sec. 939, et seq.; Wait on Fraud. Con., sec. 343; Tounsend v. Stearns, 32 N. Y., 213; Story on Con., sec. 809; Chitty on Con., 11 Am. ed., 137.

3. The undisputed evidence shows that if the premises were ever at any time exempt, plaintiff had abandoned the same as her business homestead before and at the time she made the assignment, and hence the same passed to the assignee. Shryock & Rowland v. Latimer, 57 Texas, 674; Pfeiffer & Co. v. McNatt & March, 74 Texas, 640; Bowman v. Watson, 66 Texas, 295; Watts v. Miller, 76 Texas, 13; Kaufman & Runge v. Fore, 73 Texas, 308.

STAYTON, CHIEF JUSTICE.—Plaintiff in error made a general assignment as an insolvent debtor, for the benefit of all her creditors, in accordance with the statute regulating that subject, and defendant in error claims the lots in controversy through purchase from the assignee.

She was the head of a family prior to and at the time the assignment was made, and had been for sometime engaged in a mercantile and manufacturing business, conducted on the lots in controversy, which were protected from forced sale by reason of the purpose for which they were used.

She also owned a house, in which, with her family, she resided, but this was not contiguous to the property in controversy.

The deed of assignment, without describing it, purported to convey all the property owned by her, "except such property as is exempt by law from levy and sale under execution;" and to it was attached a statement giving the names of her creditors and the sum due to each, as well as an inventory of her property, which embraced the lots in controversy, particularly described, as well as some other real property, but it did not embrace the property on which she and family resided.

The heading to the paper last named was as follows, "Inventory of property assigned by Mary A. Tackaberry," and to it was attached her affidavit stating that "the foregoing inventory or schedule is in all respects just and true, according to the best of my knowledge and belief."

This action was brought by plaintiff in error to recover the property, on the ground that title thereto did not pass to the assignee, because excepted from the assignment.

The cause was tried without a jury and a judgment rendered for defendant; but as no conclusions of fact and law were filed, we have no means for ascertaining on what ground the judgment was based; but the Court of Civil Appeals held that these papers were to be read together, and evidenced an intention to convey all property not exempt from forced sale, and also to convey the property in controversy, even though it was exempt property, and would not have passed but for effect given to the schedule.

The deed of assignment does not refer to the schedule for description of the property intended to be conveyed by the general description given, and the schedule was evidently made to comply with the statute, which requires a schedule of all the assignor's property, whether exempt or not. Civ. Stats., art. 65b.

To guard against misconception that might arise from compliance with this requirement, it is provided, in the seventh paragraph of the article referred to, that "nothing contained in this act shall affect the assignor's right to retain all such of his property as is by the Constitution and laws of this State exempt from execution."

The purpose of the schedule is manifest, and the heading, which was evidently made for the purpose of identifying it, ought not to be given

effect as a conveyance, and especially so if repugnant to the clause in the deed declaring the intention to convey and determining in general terms what was intended should pass under the conveyance. That it was not intended property exempt from forced sale should pass, is made clear by the deed; and if this was the character of the property in controversy when the deed was delivered, then the exception contained in it must be given effect, as fully as though the excepting clause in the deed had minutely described the property excepted from its operation.

The schedule can not extend the operation of the deed beyond the intent manifested by it; but if there was uncertainty as to the property intended to be conveyed, a schedule referred to for description would be as effective for the purpose of identification as would be a description given in the face of the deed.

As held in Keating v. Vaughn, 61 Texas, 518, the schedule referred to, or required to be made, may be looked to for some purposes in construing a deed, but it can not be looked to and made to operate as a conveyance of property which the deed expressly provides shall be excepted from its operation.

The case before us is a much stronger case than was the case of Ex Parte Jardine (10 Law Reports, Chancery Appeal, 322), which well illustrates the rule as to the effect to be given to a schedule. In that case it appeared, that the makers of the deed, in terms, by it conveyed all the working plant owned and used by them as iron founders, which was described in the deed with some minuteness, but reference was therein made to a schedule, executed at the same time, for a more particular enumeration of the things intended to be conveyed.

The deed upon its face showed no intention to convey the stock in trade owned by its makers, but did provide that the schedule should be "read and construed as forming part of these presents."

The heading to the schedule stated somewhat in detail the general classes of property embraced in its enumeration, and showed the purpose for which it was made, and in this was made a general statement of property that would embrace the stock in trade.

The schedule was contained in twenty-one pages, and on the twentieth and twenty-first pages appeared the following: "The stock in trade consists of bolts, brass work, wrought and cast iron work, brass and other work, both finished and in preparation; also, all cast and wrought iron, steel, timber, and all other stock in trade in and upon the before mentioned foundry, work shops, and premises;" and it concluded as follows: "The contents of the twenty preceding sheets is a complete and exact inventory of the fixtures, machinery, utensils, and things in, upon, or about the St. Paul's Foundry, Blackburn, mortgaged by us this day to Mr. William Jardine for securing the sum of £4000 and interest."

The schedule was signed by the makers of the deed, which was intended to operate only as a mortgage.

After stating that the deed did not show an intention to convey the stock in trade, the court thus correctly stated the rules of law applicable to the facts: "But it is said that the words [of the deed] are enlarged by the inventory. The inventory is not a part of the deed, but is made a part of it for the purpose of giving a more detailed description of the articles included in the deed. This inventory also contained a list of things of an entirely different nature, and the argument is, that therefore they are included in the deed. In my opinion, the reference to the inventory has no such effect. If something clearly within the terms of the deed had been omitted from the inventory, such omission would not have prevented its passing by the deed. So, on the other hand, we can not hold the scope of the deed to be enlarged by a mere reference to a detailed catalogue of the things which were intended to be conveyed."

It does not follow, however, because the deed, in connection with the schedule, can not be held to convey property exempt at the time the deed was delivered, that an inquiry may not be made as to what property was or was not exempt at that time; nor does it follow that the schedule may not be looked to, so far as relevant, for the purpose of ascertaining facts on which must rest the question of exemption.

If the property was exempt at the time the deed was delivered, no title to it passed to the assignee, and he could convey none to defendant in error, although the exemption may have been subsequently lost; while, on the other hand, if the property was not exempt, it passed to the assignee, and through his deed defendant in error has title.

The rule that the home of the family, so long as it continues to be the property of the head of the family and is occupied by the family as a residence, can not be considered as abandoned, whatever may be the intent as to future occupancy, is a wholesome rule, and ought not to be departed from; and it may be conceded that the same general principles applicable to the abandonment and consequent loss of exemption apply to the place of business as well as to the residence.

If the family remove from the homestead, with intent never to occupy it again, this is an abandonment of the right to further exemption, unless the removal be mala fide on the part of the head of the family consisting in part or in whole of a husband and wife; and abandonment of a place of business will exist whenever the head of the family ceases to use his property for a purpose for which the exemption is given, if he have no present intention to resume that or to pursue some other calling or business on the property.

Cessation of business, the pursuit of which gives the exemption, has practically the same relation to the right to have the exemption continue as has the removal of the family from the home; and in these cases the

intention with which the removal of the family or cessation of business is made determines the further right to exemption.

It has been held in several cases, that the making by an insolvent of a general assignment for the benefit of his creditors does not, of itself, defeat his right to have exemption of his place of business continue; but it never has been held that the exemption would continue if, at the time the assignment was made, there was no intention to continue on the premises the former business, or to pursue some other of character such as to give exemption.

In Scheuber v. Ballow, 64 Texas, 168, it was shown that the assignor, at the time the assignment was made, intended to continue to use the former place of business for a purpose that would continue the exemption.

In Gassoway v. White, 70 Texas, 477, no intention was shown to cease to use the property in a business that would continue the exemption; but in that case it was said, " where such use is definitely abandoned, it is no· longer exempt."

As said in Archibald v. Jacobs, 69 Texas, 254, ordinarily property exempt, because then used as a place of business, would not pass by assignment under the statute for the benefit of creditors, because when the assignment takes effect facts exist which give the exemption; but this is not true if, prior to or contemporaneously with the voluntary breaking up of the business, there be an intention not to resume that or to carry on some other business on the property.

A voluntary discontinuance of business ought to be given the same weight on question of abandoment as is given to a removal from the home; and in the one case as in the other, the remaining question of fact necessary to be ascertained to determine whether abandonment exists in a given case, is that of intention.

If the removal of the family from the home or the voluntary discontinuance of the calling or business be without intent, in the one case, again to use the property as a home, or in the other to resume the old or to pursue some other business on the property, then abandonment exists.

As mere ownership of property with and on which the head of a family might carry on a business does not give to such property exemption from the claims of creditors, to give that exemption it is necessary that the property be used for the conduct of the business; and when an insolvent debtor assigns all his property not exempt from forced sale, in a controversy as to what passed by the deed, a court is compelled to determine whether the facts existing when the deed became operative withdrew particular property from liability to forced sale for debts of the assignor; for its status at the time the deed became operative is the sole matter that can be looked to for determining what was conveyed and what was excepted from the conveyance, when there is no description of the property con-

veyed or intended to be excepted other than that all the maker's property is conveyed, except that not subject to forced sale for payment of debts.

Property may have been exempt, by reason of the manner of its use, when the assignor determined to make an assignment; or it may, for the same reason, have been exempt when the deed was written; but if before its delivery the use of the property for the purpose that gave the exemption ceased, then the property would not be longer exempt, if there was no intention again to use it in carrying on the calling or business of the head of the family.

The deed, list of debts, and the schedule of property are shown to have been made out before the deed was signed or the schedule sworn to, and some period of time presumably intervened the doing of these things and the delivery of the deed and other papers; and it ought not to be presumed, in view of the fact that the stock in trade and other personal property with which it was conducted passed by the assignment, and was intended so to pass, that the business was carried on or intended to be carried on after the deed and schedule were made out, for transactions in the ordinary course of trade would necessarily have rendered the schedule incorrect.

This is not like a case in which a mechanic having a shop and tools with which he carries on his business makes an assignment in general terms conveying all his property, except such as is exempt from forced sale.

In that case everything owned and necessary for the business is excepted; while in this and like cases, all the personal property necessary to the existence of the business, it must be conceded, passed and was intended to pass by the assignment.

The business was practically destroyed by the conveyance of the things necessary to its existence; and the same inferences as to discontinuance of business ought not to be drawn in the two cases, solely from the fact that an assignment was made.

If it were shown that the business, however, was carried on until the very moment the deed became operative, we do not see that, upon principle, the result would be different; for all persons making such conveyances do so with the knowledge that the act, in its consummation, destroys the business, and must be held to have contemplated that result.

Thus is furnished one of the facts on which abandonment must depend.

It is fairly evident that the assignor did not understand that it was her duty to make a schedule of all her property, exempt and unexempt; and while, as before said, the schedule can not be made to convey property excepted from the operation of the deed, it may be true that it ought to be looked to, in the light of the facts of the case, to ascertain what she understood to be exempt property and therefore not conveyed.

She must be supposed to have comprehended the facts on which exemption depended, and it is not unfair to infer, when she omitted from

the schedule property clearly exempted, that she understood the situation of the scheduled property to be such that exemption could not be given to it; that the business had ceased, without intention to resume it, or to begin and prosecute some other on the property, through which exemption might be continued even after temporary suspension.

The exception in the deed has effect without bringing the property in controversy within its operation; and we are of opinion, that the trial court, under the evidence, might have found that the business ceased before the delivery of the deed, and was bound to find, in any event, that it ceased simultaneously with the delivery of the deed; and, in view of the judgment, it ought now to be presumed that such was the finding.

The evidence shows beyond controversy that the assignor had no fixed intention at any time either to resume the business she had formerly carried on or to conduct some other business on the lots such as would have continued the exemption, notwithstanding a temporary cessation.

Other questions presented need not be discussed, for those already considered are conclusive of the rights of the parties, and the judgment will be affirmed.

It is so ordered.

*Affirmed.*

Delivered April 6, 1893.


### ON REHEARING.

STAYTON, CHIEF JUSTICE.—The motion for rehearing assumes that the Court of Civil Appeals found as a fact that the property in controversy was not abandoned as a place of business prior to or simultaneously with the taking effect of the deed of assignment, but no such finding was made; nor did this court assume directly to make a finding on that fact.

The District Court gave no findings of fact, but the testimony bearing on the question of abandonment was without conflict and amply sufficient to show that fact, and in disposing of the cause this court assumed that the District Court in rendering the judgment gave such effect to evidence as it was entitled to.

If plaintiff in error desired a specific finding by the District Court or the Court of Civil Appeals on the question of abandonment, this should have been asked, and by failing to do so, she is not entitled to have a reversal of the judgment in the face of uncontradicted evidence sufficient to prove the vital fact on which the right of the parties depends.

While it is not the province of this court to pass upon controverted facts, it may look to such as are uncontroverted, and assume that the trial court gave to them proper weight. If a case should arise in which a Court of Civil Appeals finds a conclusion of fact without any evidence to

sustain it, this court would not be without power to disregard such a finding.

The other questions presented by the motion do not require further discussion, and it will be overruled.

*Motion overruled.*

Delivered May 11, 1893.