MARY HUGHES DREW ET AL. V. AUGUSTA WOOTEN ET AL.

Decided December 21, 1901.

1.—Homestead—Abandonment of Part—Husband's Power.

The husband acting as the head of the family and in good faith, has power ·to contract the homestead area by abandonment, without the concurrence of the· ¬wife, and in such case his deed alone will convey the title to the part abandoned.

2.—Same—Actual Abandonment Necessary.

The abandonment must be actual, and mere intention to abandon as evidenced by the husband's deed and the like is not sufficient where the homestead use continues.

3.—Same—Surrender of Possession.

Where the husband had bought and inclosed a block of twelve town lots for a homestead, and prior to his conveyance of one of the lots to another person he permitted the purchaser to place lumber on the lot for the erection of a house thereon, there was an abandonment of the possesion and occupancy of such lot for homestead purposes.

4.—Same—Evidence.

Where for several years after the husband's conveyance of the abandoned lot he did not render it for taxes, and the wife did not render it the year after his death, nor assert any claim during all these years to the lot as being stll a part of her homestead, her testimony that she refused to sign the deed conveying it, and never intended to relinquish her homestead claim to it, is ineffectual.

Appeal from Childress. Tried below before Hon. G. A. Brown.

*Edward E. Diggs,* for appellants.

*Stovall Johnson* and *A. A. Henderson,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—April 6, 1893, William White-head conveyed to Frank Wilson lot 6 in block 90, in the town of Childress. Suit was brought by appellants, the remote vendees of Wilson, to recover this lot from appellee Augusta Wooten, the surviving widow of William Whitehead, who died in the summer of 1899, and W. G. Wooten, her second husband, and C. Harmonson. In a trial before the court without a jury the recovery sought was denied, and from that judgment this appeal is taken.

But one error is assigned, in which assignment it is stated that the only issue involved is whether or not "at the time of the execution of the deed by said William Whitehead conveying to Frank Wilson said premises" the same constituted a part of the homestead of Whitehead and wife.

The evidence warranted a finding that when Whitehead purchased block 90, March 7, 1893, which was then vacant, it was with the intention on the part of himself and wife of making the entire block their homestead; that when they moved into the house which they had just constructed on lot 1, the northeast corner of this block, about March 22, 1893, and when they inclosed with a wire fence the entire block two days thereafter, such was still the intention of his wife. But was the evidence such as to warrant a finding that the lot in controversy, the northwest corner of the block, had become and was still a part of· the homestead, when Whitehead, without the joinder of his wife, conveyed it to Wilson, April 6, 1893? The conduct of William Whitehead about the time and after the deed was made to Wilson, who had already prepared to build and at once built a house upon and occupied the lot as a home for several years thereafter, tended strongly to show that when he made the deed to Wilson, and even prior thereto, he must have intended to sever this lot from the homestead. It was within a year thereafter fenced off from the rest of the block, by the father of Mrs. Whitehead, though, as claimed by him, merely for the purpose of keeping Wilson's chickens out of his garden. It was never rendered for taxes by William Whitehead during the remaining six years of his life, although he rendered the other eleven lots in the block regularly; nor did Mrs. Whitehead render it the year after his death. No notice was ever given to Wilson, or to any of his several vendees, who occupied lot 6 in succession during all these years as a home, that it was claimed as a part of the Whitehead homestead. Against these stubborn facts of contemporaneous and after conduct is the bare statement, though under oath, of Mrs. Wooten, that she refused to sign the deed and never intended to give up, but always claimed lot 6, as a part of the homestead, which in view of seven years of silence on her part, pending the continuous occupancy of the lot in question by others as a home, to say nothing

of her omission of the lot from her tax rendition of 1900, looks very much like an afterthought. It has been several times held in this State to be within the power of the husband, acting in good faith, without the concurrence of the wife, to contract the homestead area by abandonment, he being the head of the family. There must, however, be an actual abandonment; mere intention to abandon, as evidenced by his deed and the like, not being sufficient where the homestead use continues. But where prior to or contemporaneous with the delivery of the deed and surrender of actual possession of a part of the homestead premises there is both the good faith intention on the part of the husband, who makes the deed, to abandon, and an actual cessation of the occupancy and use of the part so conveyed as a part of the homestead, such conveyance by him alone is not within the constitutional inhibition. Tackaberry v. Bank, 85 Texas, 488. That it was the intention of Mr. Whitehead, in selling lot 6 to Wilson, whatever may have been the intention of his wife, to exclude it from the homestead, must be accepted, we think, as an established fact; and we so find. To overturn the judgment, however, we must further find that when the deed was made to Wilson lot 6, then, if it had not theretofore, ceased to be occupied or used as a part of the homestead; or, rather, that the evidence did not warrant a finding to the contrary. On this issue there was seeming conflict in the testimony, but on careful analysis, making due allowance for the inaccuracy of witnesses after the lapse of many years as to time and dates, this conflict will be found more apparent than real. We find nothing in the testimony of other witnesses in direct or necessary conflict with the following testimony of witness Bates, the truth and accuracy of which can not reasonably be doubted: "I was in charge of the Carey Lombard lumber yard in Childress, in March, 1893. I had just come to Childress. I knew Frank Wilson and William Whitehead. I sold Frank Wilson the lumber to build the house in controversy in this suit, situated on lot 6, block 90, on the 20th day of March, 1893, and delivered same to him that day. I went to the place where the house now stands on that day, after I delivered the lumber, and the lumber was on the ground, and the carpenters were at work sawing same for building. I do not remember whether the fence was there around the block or not. I know I sold and delivered the lumber to Wilson on March 20, 1893, because my books show it."

It thus appears that, even before the deed was made to Wilson, the lumber for his home must have been purchased and thrown upon the ground, doubtless in anticipation of such conveyance; and while the testimony of Augusta Wooten and her father, and perhaps other witnesses, was to the effect that his house was not built till after the deed was made to him, and after Whitehead had been occupying for a short time the entire block as a home, they did not state when Wilson commenced to build his house; and the fact yet remains that in thus allowing Wilson to enter upon lot 6 and make preparation to build a house of his own upon it, Whitehead must have surrendered its use and occupancy as a

part of his homestead, if indeed it had ever become a part thereof. Wilson was positive that after he purchased the lot neither Whitehead nor his wife ever used or occupied the same in any way, or attempted to do so.

If block 90 was the separate property of Mrs. Whitehead, the several purchasers from her husband were innocent purchasers for value from one holding the legal title.

We think the court should have allowed each of the contending parties a home instead of giving two to Mrs. Wooten.

The judgment is therefore reversed and here rendered for appellants.

*Reversed and rendered.*