## KELLY v. NOWLIN. (No. 2351.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 20, 1921. Rehearing Denied Feb. 3, 1921.)

1. **Homestead** &#9758;71—**Apartment over store held homestead.**

An apartment over a store in a building which was the separate property of the wife, which was fitted up as a dwelling and occupied by the wife and her son and by her husband whenever his business permitted him to be in town, was the homestead of the husband and wife, in the absence of any evidence that the husband claimed a home elsewhere.

2. **Homestead** &#9758;38, 154—**Husband has right to designate home and determine abandonment.**

The husband, as the head of the family, has the right to designate the home and to determine when the homestead should be abandoned.

On Motion for Rehearing.

3. **Homestead** &#9758;57½—**Evidence held not conclusive that homestead included building on adjacent lot.**

In trespass to try title to three lots and the buildings thereon, where plaintiff claimed right of occupancy as the homestead, a statement of facts showing that there were two buildings on two lots with a stairway between them to the second story *held* not to show conclusively that the building was not divisible into two separate parts adapted to distinct uses, so that that question should be submitted to the jury.

4. **Homestead** &#9758;71—**Not restricted to rooms occupied, but includes lot if owned by dwelling owner.**

The homestead, as constitutionally defined, is not restricted to the rooms actually occupied as such, but includes the lot on which the building stands, if that is owned by the owner of the dwelling.

5. **Homestead** &#9758;166—**Declaration by wife held not abandonment of homestead.**

Where the homestead is the separate property of the wife, her declaration, on leaving it for a health resort, that she never expected to live there again, without any statement denying the right of her son and husband to continue to occupy it as a home, was not an abandonment of the homestead, if such an abandonment by the wife would be conclusive against the husband, where the homestead was her separate property.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Trespass to try title by Roy Nowlin against M. P. Kelly. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Marsh & McIlwaine, of Tyler, for appellant.

Simpson, Lasseter & Gentry, of Tyler, for appellee.

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HODGES, J. In March of the present year the appellee, Roy Nowlin, filed this suit in the district court of Smith county in the form of an action of trespass to try title. The purpose was to recover possession of lots 4 and 5, in block 6, situated in the town of Lindale, Smith county, Tex. The appellant, his stepfather, concedes that the appellee owns the title to the property in controversy, but resists the suit upon the ground that the property was the homestead of himself and his deceased wife at the time of her death and that he had the right of occupancy during the remainder of his life. The property consisted of two buildings on two lots situated on one of the business streets of Lindale; each of these buildings was two stories high. There was a stairway running between them to the second story, terminating at a platform. Here a door opening on each side furnished the means of ingress and egress to and from the upper stories. The lower story of one portion of the building had, some years ago, been leased to the federal government as a post office, and was being used for that purpose at the time of trial. The upper story had been fitted up for rooms suitable for a dwelling place for a private family. The other portion of the building had been rented out for business purposes. The property originally belonged to the separate estate of Mr. Kelly, wife of the appellant, who died in October, 1919. Mrs. Kelly left a will in which those lots and other property not involved in this suit were bequeathed to the appellee, who was her only child. The only question presented in this appeal is, Was the property being used and occupied by Kelly and his wife as the family homestead at the time Mrs. Kelly died? The court submitted that issue to a jury, and it was answered in the negative. The appellant contends that under the evidence the court should have held, as a matter of law, that the property was, on the date referred to, the family homestead.

The facts show that Kelly married the appellee's mother, who was then a widow, in California during the month of June, 1915. Mrs. Kelly some months thereafter came to Texas and stopped with relatives near Lindale. A few weeks later she was joined by Kelly. In the early part of 1916 Mrs. Kelly moved her household goods into the rooms on the second floor of the building above referred to. She continued to occupy those rooms as her home until August, 1919. Kelly was engaged in the business of contracting, and was absent from home most of the time. He lived temporarily at Paris, Dallas, and McKinney during the times that his business required his presence at those places. He spent a considerable portion of his time in Dallas, and while there stopped at the St. George Hotel. There was some testimony tending to show that he told those with whom he discussed the matter that the St. George Hotel was his home. The evidence, however, shows that he visited his wife at intervals, and that they resided together during his visits in the rooms over the building in controversy. Those rooms were fitted up with the furniture and equipments commonly used in housekeeping. During the time Mrs. Kelly resided there the appellee, who was her only child, resided with the family. He took his meals there and slept there while in Lindale. Some time about the first of the year 1919 Kelly engaged in farming a few miles from Lindale. Most of the time he was absent from home, superintending his farming operations. He and his employees lived in tents and other temporary quarters. He went to Lindale, according to his testimony, once every week or two, visited his wife while there, and during those visits they occupied the premises in controversy. Mrs. Kelly was afflicted with tuberculosis, and in August of 1919 she left Lindale for Sanitorium, Tex., to be treated for that complaint. The appellee testified that while going to the train she told him that she never expected to live in Lindale again. It appears from other portions of the testimony that she and Kelly had discussed the matter of moving to El Paso for the benefit of her health. In October, a little more than two months from the time Mrs. Kelly left her home, she died while under treatment at Sanitorium. The testimony justifies the conclusion that during Mrs. Kelly's absence no change was made by Kelly in the use and occupancy of their rooms. The question is, Were these facts sufficient to show, as a matter of law, that the property in controversy was used and occupied as a family homestead at the time Mrs. Kelly died?

[1] The building was arranged for a dwelling. It was an apartment where a family might reside with comfort. It was furnished with the equipments required for housekeeping. Here Mrs. Kelly and her son for several months ate their meals and slept, and it was here that Kelly, who had no other permanent place of abode, visited his wife at intervals while engaged in a line of business which required him at times to be absent in other parts of the state. It was the only place owned by either Kelly or his wife used by them in any manner as a home or a place of residence. These facts were sufficient to impress upon the premises the homestead character. Had an effort been made during such occupancy to mortgage the property as security for a debt, the incumbrance would have been void. Rose v. Blankenship, 18 S. W. 101; Jacobs v. Hawkings, 63 Tex. 1; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829; Bayless v. Guthrie, 218 S. W. 131.

[2] Unless the evidence shows an abandonment of the premises at or prior to the death of Mrs. Kelly, the homestead character continued and the property became subject to the appellant's claim as the surviving spouse. The only evidence of abandonment

relied on is to be found in the acts and declarations of Mrs. Kelly. It is undisputed that she left the place to go to a health resort for treatment. Her household goods remained at the place of residence. It is true the appellee testified that she told him at the time she left that she never expected to live there again. But there is nothing to show that Kelly concurred in that decision, or that his relations towards the premises were substantially altered after his wife left. As the head of the family he had the right to designate the home and to determine when it should be abandoned. Tackaberry v City Natl. Bank, 85 Tex. 488, 22 S. W. 151, 299.

We conclude that the finding of the jury in this case was contrary to the evidence, and for that reason the judgment should be reversed. The case, however, will be remanded for such other proceedings as may be proper in the court below.

### On Motion for Rehearing.

[3] In response to the appellee's motion for a rehearing, we think it proper to make a more definite statement of the ruling reversing and remanding this case. The jury found that no part of the property in controversy was the family homestead at the time Mrs. Kelly died. Our conclusion is that the building, or that part of it which the evidence shows was occupied by Kelly and his wife as rooms, including the lower story and the lot beneath their rooms, was the homestead. The record shows that there were two lots. We are not prepared to hold, as a matter of law, that the homestead rights of the appellant should extend to and include that portion of the property situated on the adjacent lot. The description of the structure contained in the statement of facts is not such as to conclusively show that it is not divisible into two separate and distinct apartments, and adapted to distinct uses. While the verdict appealed from included a finding that the part of the property situated on the adjacent lot was not used as the homestead, that finding was based upon the conclusion that none of it had been impressed with the homestead character. The verdict therefore does not settle the question as to the structural unity of the building. Hence we leave that as an issue of fact to be determined upon another trial.

[4] The contention that the homestead rights of the appellant should be restricted to the rooms actually occupied is untenable. The constitutional definition of the homestead refers to the lot or lots upon which the residence may stand. It is true that in Cullers v. James, 66 Tex. 494, 1 S. W. 314, referred to by counsel for appellee, the Supreme Court held that a homestead right may attach to the building alone when occupied as a residence. But that rule applies when the building is mere personalty, and not a fixture forming a part of the realty, as when the land is owned by one party and the house by another. But where the owner of the house also owns the land upon which it stands the building becomes a fixture, and the homestead rights attach to both. New Orleans Ins. Co. v. Jameson, 6 Tex. Civ. App. 282, 25 S. W. 307. In this case the homestead character was created during the lifetime of Mrs. Kelly, when she owned the fee to the lot upon which the building stood. The lot as well as the building was her homestead. The appellant now has a right to a perpetuation of the homestead claim which then existed.

[5] It is also contended that under the law as it now exists, which endows a married woman with the right to control and manage her separate property, the husband no longer has the right to determine that the homestead shall continue on her property. Even if that be true, that question is not involved in this case, since there is no evidence that Mrs. Kelly undertook to exercise any authority in determining that her property should not thereafter be used for homestead purposes. It is true she indicated that she never expected to live at Lindale again, but there is nothing to indicate that she objected to the continued use and occupancy of the property thereafter as a home by her husband. It seems that the household goods were allowed to remain in the rooms, and no other homestead had been acquired or selected. Her declarations were not inconsistent with an intention to permit the continued use of the premises as the family home till another place of abode had been selected.

Except as above indicated, the motion for rehearing is overruled.