CULLERS & HENRY v. LIBBIE JAMES.

(Case No. 5095.)

1. MARRIED WOMEN—DISABILITY—DESERTION—In Texas, practically the protection and the disability of marriage have been linked together, and the wife when deprived of the one has been released from the other. (Following Ezell v. Dodson, 60 Tex., 331.)

2. SAME—When the husband abandons the wife and their community property, there is nothing to prevent her, as a party in interest, from asserting her rights in the courts. She may intervene in a suit against her husband, and assert her right to recover of the plaintiff the value of exempt property wrongfully converted by him.

3. PERSONAL PROPERTY—See opinion and facts for property held to be personalty.

4. HOMESTEAD EXEMPTION—CONSTITUTION CONSTRUED—House is necessarily embraced in the word homestead. (Franklin v. Coffee, 18 Tex., 417.) If the head of a family owns a house and occupies it with his family, though he own no interest or estate in the land on which it stands, it is the home of the family, and is embraced in the spirit and purpose of the Constitution. The same rule applies to the place of business.

5. SAME—Before a mill and gin, with their machinery, can be exempt as part of the homestead, they must be part of the exempt realty. They form no part of the home proper, and can be claimed as exempt only when embraced in the words of the law as part of the land protected.

6. TOOLS OF TRADE—Mill and gin machinery are not exempt as tools of trade.

APPEAL from Grayson. Tried below before the Hon. Richard Maltbie.

On June 26, 1882, Cullers & Henry filed in the district court of Grayson county, their petition against A. P. James, claiming an indebtedness against him on account for goods sold and delivered in the sum of $2,822.87, and on the same day sued out a writ of attachment against the property of James, alleging as ground of attachment, that James was about to convert his property into money, for the purpose of placing it beyond the reach of his creditors.

The attachment was, on June 27, 1882, levied upon certain property of James, including the following: One gin house, one store house,

one dwelling house, one grain house, one steam boiler, engine, pump and fixtures, four circular saws and tables, three turning lathes, one cotton gin, one cotton press, one wood tramway, two automatic turn heads, three sets of turn tools, one boring auger, two sections line shaft, twelve pulleys, one dump cart, one seed carrier, one cross cut saw, some belting, extra valves, one pair Fairbank's scales, four counter shafts and pulleys, one planing machine, one saw mill, twelve cars and all the interest of James in the land upon which the property was situated.

On July 19 and 20, 1882, a part of the property was sold under order of court as perishable, James having absconded from the country before service of citation was had upon him. Citation was served by publication, and on March 16, 1883, E. C. McLain was appointed by the court to represent his interest. On March 27, 1883, McLain filed an answer, amending one filed March 14, 1883, and containing a general denial, claiming all the attached property as exempt under the homestead law, setting up title to the land upon which the machinery was situated under a lease from Robt. Walker to A. P. James, and praying for damages against plaintiffs for wrongfully converting the property.

On March 17, 1883, Elizabeth James, by Hare & Head, her attorneys, intervened, alleging that she was the wife of defendant, A. P. James, and had been his lawful wife since about May 30, 1875. That about a day before the institution of this suit A. P. James permanently abandoned her, and left the country, and since that time she had heard nothing from him and he had contributed nothing towards her support; claiming the right by reason of the abandonment to manage, control and dispose of the community property, and to prosecute and defend suits in reference thereto. She also denied generally every allegation in plaintiffs' petition, and "by way of cross-bill and plea of reconvention," alleged that the property attached in the case was all the community property of herself and her husband, and at the time of the levy of the attachment and of her abandonment by James, and for a long time prior thereto, they were citizens of Texas, and the land upon which the attached property was situated, and the improvements and appurtenances thereto belonging, constituted their homestead and were actually used and occupied as such; that James was engaged in running a gin, mill, turning lathes and other machinery on the premises as his business as head of the family, and that the attached property heretofore mentioned was upon the land, was the tools of trade of James, and constituted a part of the homestead of Elizabeth and A. P. James.

· That James held and possessed the land under contract with Robert Walker to put thereon a gin and grist mill and was to have the possession and use as long as the gin and grist mill remained and were operated thereon.

That on June 27, 1882, the sheriff of Grayson county, by direction of plaintiffs, Cullers & Henry, attached the property under a writ of attachment, issued in this case against A. P. James, took actual possession thereof, evicted and excluded Elizabeth James therefrom, and had ever since held possession; that thereby Cullers & Henry became liable to her for the value thereof. She also claimed rent for the premises, alleged the rent to be worth $2,500, and asked damages against Cullers & Henry, aggregating the sum of $10,000.

The court filed special findings of law and fact, and rendered judgment in favor of Cullers & Henry against A. P. James for $3,105.14, the amount of their claim against him, foreclosed their attachment lien on the property attached, directed the sale of such as had not been sold, and ordered that the proceeds be applied to the payment of their claim against A. P. James. The court also rendered judgment in favor of Elizabeth James against Cullers & Henry for $4,872.22 damage for the wrongful conversion of the attached property, and for the further sum of $50.00 attorney's fee of E. C. McLain for representing the absent defendant, A. P. James.

*Finley & Pasco*, for appellants, on the intervention of the wife, cited: Kendall *v.* Clark, 10 Cal., 17; 1 Am. Law Reg., N. S., 717, note.

On homestead, they cited: Const., Art. 16, sec. 51; Smith *v.* Chenault, 48 Tex., 455; Farmer *v.* Simpson, 6 Tex., 303; 1 Wash. on Real Prop., 3d ed., 331, 337; see article by Judge J. F. Dillon, 1 Am. Law Reg., N. S., 651, 652; Calderwood *v.* Cevis, 23 Cal., 337; Bouvier's Law Dic., word "Land"; Brown *v.* Keller, 32 Ill., 154.

As to the machinery being part of the homestead, they cited: Adams *v.* Lee, 31 Mich., (9 Post.), 440; Robertson *v.* Corsett, 39 Mich., 777; Boon on Law of Real Prop., sec. 9, and cases cited in note; Moody *v.* Aiken, 50 Tex., 72; McJunkin *v.* Dupree, 44 Tex., 500; 1 Wash. on Real Prop., 16, 17; Teaff *v.* Hewitt, 1 Ohio St., 535-6; Herman on Chat. Mort., sec. 10; McCall *v.* Walters Sup. Ct. of Ga.; Wagner *v.* Cleveland, etc., R'y, 22 Ohio St., 576.

*Hare & Head* and *Dillard*, for appellee, as to the right to sue for damages, cited: Rodgers *v.* Ferguson, 32 Tex., 533; Thomp. on Homesteads and Ex., 874, 877.

On homestead, they cited: Wheatley *v.* Griffin, 60 Tex., 209; Free-

man on Co. Ten. and Par., sec. 55; Thomp. on Homestead and Ex., 176; Freeman on Ex., 242.

As to the machinery being part of the homestead, they cited: Railway Company v. Winter, 44 Tex., 611; Smith v. Chenault, 48 Tex., 455; Thomp. on Homestead and Ex., 106, 107; 30 Tex., 186; 14 Tex., 594; Alexander v. Holt, 59 Tex., 205.

Robertson, Associate Justice.—At common law the civil as well as the natural death of the husband restored to the wife her rights and powers as a *feme sole*, if she was thus deprived of the benefits of marriage. Wheat. Selw., title Baron and Fem.

In Texas, practically, the protection and the disability of marriage have been linked together, and the wife when deprived of the one has been released from the other. Egell v. Dodson, 60 Tex., 331, and cases cited.

Humanity requires that when thrown upon her own resources by the abandonment of her husband or by his lunacy or imbecility, she shall be unfettered in her struggle for existence and independence. Here her separate being has not been merged in her husband as at common law, but as far as it could be done consistently with the preservation of the home and family, she has been disenthralled. She has equally with her husband an interest in the community property, and whilst her husband is the managing partner, and may assert his prerogative as long as he exercises it in good faith, yet certainly when he abandons the wife and their property, there can be no principle in our law or practice which would prevent the wife as a party in interest from asserting her rights in the courts. The husband has abdicated his authority and by that act enabled the wife to appear in court in her own name and right.

The property out of which this litigation arose was not only community property, but was claimed to be exempt from forced sale. Mrs. James, therefore, had in it a special interest, which the husband could no more sacrifice by abandonment than he could otherwise dispose of without her consent. The statute, which requires the court to appoint counsel for a defendant cited by publication, is to prevent frauds upon the court and is in the interest of a pure administration of the law, and has not the effect of depriving the wife of the defendant of any right or remedy the situation otherwise accords her. We conclude that the court did not err in allowing Mrs. James to intervene in the suit and assert her right to recover of the plaintiffs the value of any exempt property wrongfully converted by them.

The property seized under the plaintiff's attachment consisted of a tract of land of three or four acres, and the houses and machinery upon it. The land was part of the homestead of Robert Walker and wife, and was the separate property of the latter. James had possession under a lease from Robert Walker, to continue as long as James maintained and operated upon the land a gin and grist mill.

We do not deem it necessary to determine whether Robert Walker was authorized to make such lease of part of his homestead and of his wife's separate property, without the express and formal concurrence of his wife. The property, for the value of which Mrs. James recovered judgment, was correctly held by the court below to be personal and not real. The greater part of it was such, and so fixed as to make it part of the land, if James had been the owner of the land. They constituted such improvements as become part of the realty or not according to the intention of the tenant, and it is presumed that it was neither his intention nor his contract to permanently enhance the value of another's estate, by a class of buildings and fixtures which could be removed during his term without injury to the land. Ewell on Fixtures, 294; Adams v. Lee, 31 Mich., 440; Robertson v. Corsett, 39 Mich., 777.

It does not appear that Robert Walker or his wife, as owners of the fee in the land, asserted any claim to the buildings and machinery as part of the land, and the plaintiffs' attachment was levied upon them and Mrs. James recovered their value, as personalty. Hence, whether James under his lease from Robert Walker acquired any interest in the land or not, cannot affect the issues between the parties to this appeal.

It is contended that the homestead under the constitution cannot embrace personal property. The exemption is in terms of lots or acres of land, but the object was to secure to the family a home. House is necessarily embraced in the word homestead. Franklin v. Coffee, 18 Tex., 417. If the head of a family owns a house and no interest or estate in the land on which it stands, the house is a chattel. If he occupies it with his family, it is their home. He may be compelled to move it from one lot to another as fast as legal process can oust him, still, though ambulatory, unsatisfactory, and in all its appointments mean; though it advertises the thriftless poverty of its proprietors, and is a caricature of the princely possibility of the exemption laws, it is the home of a family, and is embraced in the spirit and purpose, if not the letter, of the constitution.

The same principles under our present constitution must be applied to the place of business of the head of a family. To give effect to the

object of the law, the dwelling house and the gin house must be held to have been improperly seized under the plaintiffs' writ.

But we do not feel autorized to extend the scope of the law's purpose any further than this. The mill and gin and pertinent apparatus and machinery may become part of the homestead in town or country, not because they are in themselves exempt, but because they are parts of that which is exempt. If they are annexed to and form part of a tract of land in which a family has a homestead right, their location and use will aid in determining what portion of the tract is under protection from seizure, as in the case of Railway Company v. Winter, 44 Tex., 597. But to be exempt as part of the homestead, they must be part of the exempt realty. They form no part of the home proper which it was the overruling purpose of the constitution to secure to the family, and can be claimed as exempt only when embraced in the words of the law as part of the land in terms protected.

The proposition that the mill and gin machinery are exempt as tools of trade cannot be seriously insisted upon. That it was urged that they were part of the homestead ought to be a sufficient answer to a claim so diametrically opposite. No authority has been cited which has gone far enongh to embrace as tools of trade this kind of property and the analogies and reason of the law do not persuade us to pioneer such extreme doctrine.

As Mrs. James recovered in the court below the value of all the houses and machinery on the leased lot, contrary to the principles announced in this opinion, the judgment in her favor is reversed, and as the case was tried without a jury, it is here adjudged that she recover of the appellants the sum of $575, the value of the dwelling house and gin houe, instead of the sum of $4,872$\frac{22}{100}$ adjudged below, and in all other respects the judgment of the court below remain undisturbed.

It is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered June 25, 1886.]