### O'NEIL v. QUILTER.　(No. 7388.)

(Court of Civil Appeals of Texas. Galveston. April 21, 1917. On Motion for Rehearing, Oct. 8, 1917. Rehearing Denied Nov. 23, 1921.)

**I. New trial ⬅48—Instruction to panel not to discuss verdict held erroneous.**

Court erred in charging the panel, including a jury which had rendered a verdict, that jurors should not converse with or make any statements to the parties, or their attorneys, or any one else, as to how, or in what manner, or by what means they arrived at a verdict, or state anything that transpired among the jury while deliberating on their verdict.

**2. Appeal and error ⬅1072—Instruction denying right to interrogate jurors held harmless.**

A contention that there was prejudice in charging panel that jurors should not discuss with counsel, or any one else, the manner of arriving at their verdicts, was purely speculative and without merit, in the absence of a

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

showing that an effort was made to ascertain from the jury any act of misconduct upon its part, or any member thereof, notwithstanding an alleged fear of a fine for contempt in case of an attempt to ascertain misconduct.

## On Motion for Rehearing.

3. **Fixtures** ⟨Key⟩35(2) — **Residence constructed by temporary tenant or licensee presumed to be personalty and to belong to tenant.**

There is a presumption that a dwelling house constructed upon land by a temporary tenant or licensee is personal property and belongs to the tenant, who may remove the same, but intent of the person constructing the building controls.

Appeal from Harris County Court; Murray B. Jones, Judge.

Suit by John O'Neil against M. A. Quilter. Judgment for defendant, and the plaintiff appeals. Affirmed.

See, also, 234 S. W. 528.

Townes & Vinson, J. H. Ross, and Fred R. Switzer, all of Houston, for appellant.

Hutcheson & Hutcheson, of Houston, for appellee.

LANE, J. This suit was instituted by John O'Neil, plaintiff, against M. A. Quilter, defendant, to recover rents alleged to be due upon an undivided seven-twelfths part of a 34-acre tract of land situated in Harris county, and for the value of one certain building removed therefrom by defendant.

Plaintiff alleges that he was the owner of a seven-twelfths interest in a 34-acre tract of land; that plaintiff leased said land and premises to the defendant for such length of time as said tenant desired to use and occupy the same, with the understanding and agreement that so long as the defendant regularly was employed by the plaintiff he should not pay any rent but after his regular employment with plaintiff ceased he should pay the reasonable rental value of the premises so long as he occupied the same and it was further agreed that any buildings or improvements placed upon said premises by defendant should belong to the plaintiff and should be left on the land whenever the premises were vacated by defendant; that defendant's employment ceased July 1, 1912; that he used and occupied the premises until August, 1915, and that by reason of the use and occupancy of said premises by defendant between said dates he became bound and liable to pay plaintiff the reasonable rental value therefor, which was $20 per month; that by reason of the premises defendant owed plaintiff $420 rent; that when defendant vacated the premises he, without the consent of plaintiff and over his protest, tore down and removed the residence and other improvements on said land; that by reason of the taking down and removal of said improvements the defendant became liable to plaintiff for its value, $291.62, under the contract and under the law.

The defendant pleaded the statute of frauds and general denial.

Plaintiff testified with reference to the dealings between himself and defendant that he had been an oil operator for a good many years and owned a great many wells and holdings; that Quilter worked for him on rigs, as helper and as driller, for many years; that, as defendant lived a long distance from the field of operations, he (plaintiff) told defendant that he could move on the premises in question, which was a mile and a half from Humble and nearer to their work; that defendant went there to live on the place to further the interest of plaintiff; that the plaintiff told defendant when he went on the place that while he was in his employ there would be no rent charged, but did not tell him that after he quit working for him that he would have to pay rent; that he later told him that he was going to render him a bill for rent, and that defendant laughed it off and "kidded" him about it; did not take it seriously, but the plaintiff was serious about the matter; that defendant lived there and worked for him until July, 1912; that it is not true that he filed this suit because he got into a dispute with defendant about a bit; that defendant tried to get a lease that plaintiff had, and that he went to him and asked him about it, and, when defendant told him he had done so plaintiff told defendant that he would have to pay rent; that he felt that their relations had been strained and that he felt that they had better sever their relations, but that this was not the first time he spoke to defendant about paying rent; that he did not know that he had a dollar or a stick of timber in the house defendant built on the place; that he did not want to take what defendant had paid for, but, as defendant had agreed to leave all improvements on the place when he left, there was to be no rent paid while he worked for him; that the contract was that the defendant was to move on the place and fix the old building to live in and while he was in plaintiff's employ he was to pay no rent, and when he moved off he was to leave whatever improvements he had placed thereon.

Defendant testified that he told plaintiff that he was going to move back to the field, and that the plaintiff asked him to move on his place, and said he was going to have a good deal of work to do down there, and that his place was close to the rig, and that it would not cost defendant anything to move down there and build on the place; that there was no understanding that he was to leave the improvements which

he built on the place; that the first time plaintiff told him he wanted rent for the place was by a letter in June, 1915. In this letter plaintiff said, "Morris, since things have come to like they have I will require you to pay rent and also advise you to leave the house there"; that prior to the letter no demand had been made on him for rent; that he had some trouble with plaintiff about a bit in May, 1915; that he built the house, which he moved off, with his own money, and did not use any of the lumber that was on the place; that the house was a little box house set on blocks, and these blocks were on top of the ground; that he worked for plaintiff off and on until May, 1915, but that about two years intervened between the time he worked for him in 1912 and the first work he did for him in 1915.

The undisputed evidence shows that the house removed from the premises by defendant was erected in 1910; that it was built by defendant; that material, exclusive of the labor of building, cost defendant between $150 and $175; and that it was worth about $400 as it stood on the premises.

There was also testimony to the effect that the reasonable value of the 34 acres of land immediately before the house was moved off by defendant was $100 per acre, and that its value immediately thereafter was of the value of $2,900.

The case was submitted to a jury on special issues, which issues and the answers given thereto were as follows:

"(1) Answer whether or not it was agreed and understood between plaintiff, O'Neil, and defendant, Quilter, that defendant should pay rent for the premises occupied by him after his regular employment with the plaintiff ceased. Answer this question 'Yes' or 'No.' Answer: No.

"(2) If you have answered the above question in the affirmative, and only in that event, then answer:

"(a) How many months, if any, the defendant occupied said premises after his regular employment with plaintiff ceased? Answer: ———.

"(b) What was the reasonable rental value per month during said period of occupancy, if any, of said premises? Answer: ———.

"(3) Answer whether or not it was agreed and understood between the plaintiff and the defendant herein that any buildings or improvements placed on said premises by the defendant should belong to plaintiff and be left on said land when the premises were vacated by the defendant? Answer this question 'Yes' or 'No.' Answer: No.

"(4) What was the reasonable market value of said premises immediately before the improvements constructed thereon by the defendant were removed from said land? Answer: $100 per acre.

"(5) What was the reasonable market value of the said premises immediately after the improvements constructed by defendant were removed therefrom? Answer: $100 per acre.

"(6) What was the reasonable value of the improvements at the time they were removed from said premises by the defendant, Quilter? Answer: Nothing, as cost of removal would be equal to value of improvements."

Upon these findings judgment was entered for defendant.

By appellant's second assignment he insists that:

"The trial judge erred, to the prejudice of the plaintiff, in entering a judgment for the defendant, upon the special issues found by the jury, in this, that there is no evidence in the record to the effect that there was any understanding or agreement that the house should be moved from the premises by the defendant, no evidence that at the time the defendant erected same he had any intention of removing same, and all the evidence introduced was to the effect that same was a permanent and lasting improvement, affixed to and a part of the realty, for the removal of which the defendant was liable in damages."

Appellant's proposition under his second assignment is that:

"Permanent and lasting improvements erected by a tenant and affixed to the realty become realty and the property of the owner of the premises in the absence of clear evidence of intention of the parties to the contrary or of an express agreement that the improvements should belong to the tenant."

Appellee contends that appellant brought his suit upon an express contract, and that he pleaded in only one count, and that such pleading cannot by any reasonable intendment be construed to declare as well on an implied as on an express contract, and that, as the jury found there was no agreement and understanding between the parties that any building appellee placed on said premises thereon should belong to appellant and be left thereon when said premises were vacated by appellee, appellant could not recover upon an implied contract not pleaded. This contention cannot be sustained.

"Plaintiff alleges that at the time of the leasing of said land and premises above described to the defendant there was situated thereon a residence, barn, and other out buildings belonging to the plaintiff and his cotenants; that during the time the defendant so used and occupied the same he made certain additions and improvements on said buildings, all of which, by virtue of the agreement above alleged, and under the law, became the property of the plaintiff and his cotenants; that at the time defendant vacated said premises the defendant, without the consent of the plaintiff and over his protest, tore down and removed said residence and other buildings from said land; that by reason of such unlawful and wrongful taking and destruction of said property by the defendant, as aforesaid, the plaintiff has sustained actual damages in the sum of $291.62, being the plaintiff's proportion or seven-twelfths of the value of said buildings before their destruction, and also the difference between the

market value of said land and premises before the destruction of said houses, and its value thereafter, which the defendant has failed and refused to pay."

"Plaintiff prays that the defendant be cited to appear and answer, and that upon final hearing he have judgment for his said damages, with legal interest thereon, and for costs and general relief."

We think such allegations, in effect, charged a tort committed by appellee for which he is liable, in the absence of pleading and proof of an agreement or understanding, either express or implied, that said building might be removed by him.

The building in question was a permanent improvement, and appellee did not claim in his answer that there was any agreement or understanding between him and appellant that he should have the right to remove the building; and, unless there was such an agreement or understanding, it became appellant's property, and appellee did not have the right to move it from the land. Bovet v. Holzgraft, 5 Tex. Civ. App. 141, 23 S. W. 1014; Taylor on Landlord and Tenant, sec. 544; 19 Cyc. page 1046.

There is neither pleading nor proof that there was an agreement between appellant and appellee that the building might be removed by appellee.

For the reasons pointed out the second assignment is sustained.

We also sustain appellant's third and fourth assignments. The evidence does not warrant the jury finding that the premises were of the same value immediately before and immediately after the house was removed therefrom, nor the finding that the reasonable value of the house at the time of its removal by appellee, was nothing.

The undisputed evidence shows that said house was worth several hundred dollars, and we think it absurd to say that its removal from the premises would not lessen the value of such premises, or to say that said house was worth nothing as it stood on the premises just before its removal.

[1] Appellant's first assignment and proposition thereunder are as follows:

"The trial court erred, to the prejudice of the plaintiff, by instructing the entire jury panel, of which the jury that rendered the verdict in this case was a part, not to converse or make any statements to any one, after they had arrived at their verdict, concerning any verdict or how they arrived at any verdict that had been or might be rendered during the week."

"Proposition: An instruction by a trial court to a jury which had rendered a verdict in a case not to converse or make any statements to any one concerning their verdict, or how they arrived at the same, after a verdict has been found by them, is error so prejudicial to the rights of the losing party as to require a new trial."

It appears that this cause was tried before a jury, which rendered its verdict in the afternoon, and that on the morning of the following day the trial judge instructed the jury panel for the week, which included the jury which tried this cause, as follows:

"Gentlemen of the panel for the week, the court instructs you that in all cases which have or may be submitted to you during the week, that after a verdict has been rendered by you in such case, you shall not converse with or make any statements to any of the parties, or their attorneys, or any one else, as to how, or in what manner, or by what means, you arrived at a verdict, or state anything that transpired among the jury while deliberating on your verdict therein.

"The reason for the above instruction is that, if any such information is given by any of you, it is possible that, based upon such information, this court will be compelled to set aside your verdict on a motion for new trial urged by the losing party."

[2] Such instructions are improper and cannot be too severely condemned. If the jury were guilty of misconduct for which the court would feel compelled to set aside its verdict, the party aggrieved has the right to know such fact and upon proper motion to have the verdict set aside. But appellant has made no showing that he made any effort to ascertain from the jury any act of misconduct upon its part or of any member thereof. We think the contention made, under the showing made, is purely speculative and without merit. Appellant had the legal right to interrogate the members of the jury as to misconduct on their part, and his fear that he might be fined for contempt by the trial judge is wholly groundless. The assignment is overruled.

We also think the testimony of the witnesses offered by appellee to prove the rental value of the premises was admissible, and that the court erred in rejecting the same.

For the errors pointed out, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.

On Motion for Rehearing.

[3] In our original opinion we held that appellee, M. A. Quilter, a licensee or tenant at will on the premises of appellant, John O'Neil, having failed to plead and prove that there was an understanding and agreement between him and O'Neil when he went upon the premises that the dwelling house built by him on the premises was to remain his property and to be removed by him at the termination of his license or tenancy, such house being the only dwelling house on the premises, it became a fixture and the property of the owner of the soil, as a matter of law. So holding, we reversed the judgment of the trial court in favor of ap-

pellee Quilter, and remanded the cause for another trial.

Counsel for appellee, Quilter, has filed his motion for a rehearing, and therein vigorously attacks and controverts our conclusion as above stated. He insists that upon the facts proven in this case the law raises the presumption that the house in question remained personal property, and that the title never passed out of Quilter. With vigor and with seeming confidence in his position, he insists this court erred in holding that under the facts proven the house in question became a permanent improvement and a part of the realty; that under the circumstances of this case the presumed intention which the law imputes from the facts would make the house retain its character of personalty. He says that—

"At ancient common law it was ordinarily assumed that whatever was affixed to the land became part of the land, nor were the circumstances under which it was affixed, nor the relations which the parties affixing same sustained to the realty, ever considered. At common law the only question was 'Has the building or structure in question become actually annexed or affixed to the land?' Under the influence of the laws of trade, and for the encouragement of industry and agriculture, and out of a consideration for the equities of the case, these fixed rules of law have been gradually broken down until it has become settled law that the question of the intention of the party affixing the structure is the paramount question, and it is presumed, in the absence of evidence to the contrary that a tenant having no interest in the freehold does not intend to enrich or increase its value, and all structures placed by him for the purpose of trade, or for his domestic use and convenience, are not fixtures, but are removable, and, under the influence of the principles of equity, a licensee who places buildings on the property with the consent of the owner retains the right to remove the property, because in a proper consideration the structure never becomes realty, but remains personalty, and his own property."

In support of his contention he quotes from 19 Cyc. pp. 1045 and 1047, respectively, as follows:

"The intention with which a chattel is placed upon or affixed to realty is one of the facts that may be looked to in connection with the other circumstance to aid in determining the status of what seems to be realty or personalty, as the case may be. Where there is a reasonable doubt from the manner of annexation whether the chattel has changed its status, or where there are conflicting claims thereto, the intention with which it was put in place is of importance. Indeed, it is sometimes said that the intent of the party annexing an article to the freehold is the most important criterion of its character as a fixture, and other circumstances or facts are valuable chiefly as evidence of such intention.

"If a structure is made for a residence, it generally is deemed part of the realty, although it has the appearance of being temporary and may be easily removed without injury to the freehold. Where, however, the structure is affixed to the premises by a temporary tenant thereof, or by a licensee, it is deemed temporary in its purposes and not part of the realty"

—and cites the following additional authorities: Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907; Copp v. Swift, 26 S. W. 438; Cullers v. James, 66 Tex. 494, 1 S. W. 314; 11 Ruling Case Law, pp. 1062, 1067, 1069, 1070, 1075, 1082, § 25; Ingalls v. St. Paul M. & M. Ry. Co., 39 Minn. 479, 40 N. W. 524, 12 Am. St. Rep. 676; King v. Morris, 74 N. J. Law, 810, 68 Atl. 162, 14 L. R. A. (N. S.) 439, and note, 12 Ann. Cas. 1086.

Appellant, O'Neil, never pleaded nor undertook to prove any peculiar fact which would attach said house to the soil or make it a fixture. He only pleaded that there was an agreement that the house was to be left upon the land as his property, and on this issue the jury found against him. After a careful review of the pleadings of both parties and the facts proven, and an exhaustive investigation of authorities cited by both parties on the motion, we have, not without difficulty, reached the conclusion that appellee's contention is sustained by the best reason and the weight of authority, and that the evidence supports the finding of the jury on the controlling issue, and that we erred in reversing the judgment of the trial court. So believing, we sustain the motion and set aside the judgment of reversal heretofore rendered by us and now affirm the judgment of the trial court. The remaining errors pointed out by us in our original opinion are harmless and not cause for reversal.

The judgment of the trial court is in all things affirmed.

Affirmed.