DAVID v. ROE et al.     (No. 10917.)*

(Court of Civil Appeals of Texas. Fort Worth. Jan. 24, 1925. Rehearing Denied Feb. 21, 1925.)

1. Fixtures ⊕=14—Failure of chattel mortgage to describe realty, upon which building in which machinery sold to tenant was placed, held not to give landlord, not owning realty, prior lien for rent.

Failure of chattel mortgage to describe, pursuant to Rev. St. art. 5661, as amended by Laws 1917, c. 153, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5661), the real estate upon which was located the building in which mortgagee placed machinery sold to tenant, held not to afford claim of priority for rent by owner of building who did not own the realty upon which the building was located.

2. Fixtures ⊕=18(5)—When machinery does not become a fixture.

Machinery sold under a chattel mortgage, containing an agreement that the machinery shall remain personalty and be subject to removal, does not become part of the realty under the doctrine of fixtures, when it is removable without damage to the realty.

3. Marshaling assets and securities ⊕=11— Party claiming benefit of marshaling must allege facts entitling him thereto.

A party claiming the benefit of marshaling must allege such facts as entitle him thereto, and especially if the fund to which the paramount creditor alone has recourse is adequate to satisfy his debt.

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction April 15, 1925.

**4. Appeal and error ⟨Key⟩172(1)—Remedy of marshaling cannot be raised for first time in appellate court.**

Remedy of marshaling cannot be raised for first time in appellate court.

**5. Fixtures ⟨Key⟩14—Not presumed that vendor selling machinery to tenant under chattel mortgage intended to enhance value of freeholder.**

It is not presumed that vendor selling machinery to tenant under chattel mortgage intended to enhance value of freeholder.

**6. Appeal and error ⟨Key⟩931(3)—Judgment for intervener held to require Court of Civil Appeals to presume finding in favor of intervener on any question supported by evidence.**

Judgment for intervener *held* to require Court of Civil Appeals to presume finding in favor of intervener on any question supported by evidence.

**7. Records ⟨Key⟩7—One leaving instrument with county clerk for filing and for record not responsible for errors of such clerk.**

Under Rev. St. art. 6791, a person who leaves an instrument with the county clerk for filing and for record in the county clerk's office, and pays the fee therefor, is not responsible for failure of the clerk to record same or to file it, or for the clerk's record of it in a wrong book.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by Walter David against W. W. Roe, in which the Hughes-O'Rourke Construction Company, a corporation, intervened. From the judgment rendered, plaintiff appeals. Affirmed.

Hawkins, Hawkins & David, of Breckenridge, for appellant.

Bowers & Allison, of Breckenridge, and Thomas, Frank, Milam & Touchstone, of Dallas, for appellees.

BUCK, J. Walter David, plaintiff, sued W. W. Roe, a nonresident, in the district court of Stephens county on a rental contract under which it was alleged that defendant had agreed to pay rental for a building in Breckenridge owned by plaintiff, at the rate of $75 per month, amounting in the aggregate to a sum largely in excess of the minimum jurisdiction of the district court, and sought a foreclosure of his landlord's lien against certain machinery located in said building. The Hughes-O'Rourke Construction Company, a corporation, intervened, setting up a claim of a chattel mortgage lien against the machinery in question, and alleging that its lien was prior or superior to the lien of plaintiff, and sought a foreclosure thereof. Plaintiff, by way of reply to said plea of intervention, set up a waiver of said intervener of the priority of its said chattel mortgage lien, and further alleged, in substance, that the chattel mortgage under which intervener claimed covered machinery attached to and situated on realty, and the said chattel mortgage had never been properly filed for registration, or registered in the office of the county clerk of Stephens county, and that plaintiff, before his rights accrued herein, though he had made diligent search of the records of Stephens county, had not found the record of intervener's said chattel mortgage and did not know thereof until after his said right had accrued.

A trial was had before the court without a jury and resulted in a judgment establishing the debt of both plaintiff and intervener and foreclosing the chattel mortgage lien of intervener, and foreclosing the landlord's lien of plaintiff, but subordinating plaintiff's lien to intervener's lien, and directing that the property upon which both plaintiff and intervener claimed a lien be sold and the proceeds thereof be applied first to the payment of intervener's debt, and any portion thereof remaining over should be applied to the payment of plaintiff's debt. From this judgment plaintiff has appealed.

The first proposition in appellant's brief is that the evidence shows conclusively that that articles covered by both the lien of plaintiff and the lien of intervener were machinery attached to the realty, and that the chattel mortgage of intervener was not indorsed as required by law and was not registered in the office of the county clerk of Stephens county, and did not contain any description of the realty to which said machinery was attached, and plaintiff never did learn and did not know of the existence of intervener's chattel mortgage until after plaintiff's right in the premises had accrued, and it was error for the trial court to render judgment subordinating the landlord's lien of plaintiff to the chattel mortgage lien of the intervener.

The evidence in this case shows that the plaintiff owned merely the building, and that he did not own in fee simple the land upon which said building is situated, and that he merely had a leasehold interest on the lot. On August 2, 1921, he bought the building at a bankrupt sale, paying therefor $400. The machinery involved in this case had been sold by the intervener to W. W. Roe on April 15, 1921, the purchaser giving his note for $3,883.35, payable on or before February 10, 1922, and also gave a chattel mortgage on the machinery, in which it was agreed that the title to said machinery should remain in the intervener and not vest in Roe until the full consideration had been paid. It was further agreed that as an additional consideration the purchaser should deposit with the intervener, as "collateral security for the payment of the above-recited consideration, one certain promissory note in the principal sum of $4,500, executed to W. W. Roe, February 10, 1921, by J. M. B. Cowan

and nine others." It was further provided that if said indebtedness was not fully liquidated by the proceeds from the sale of said collateral note, then, in that event, the intervener, its successors or assigns, should have the right to repossess itself of said machinery and sell the same at public or private sale, with or without notice.

Article 5661, Vernon's Ann. Civ. St. Supp. 1918, provides that chattel mortgages and other instruments intended to operate as mortgages or liens upon personal property shall not hereafter be recorded at length as heretofore required; and, when deposited and filed in accordance with the provisions of this law, shall have the force and effect heretofore given to a full registration thereof, and all persons shall be thereby charged with notice thereof, and of the rights of the mortgagee. It further provides that when any machinery or other manufactured article is susceptible of being attached to the realty in such a way as to become a fixture thereto and is located upon real estate in such manner as the same may be deemed a fixture thereto, etc., and the mortgage contains a description of said machinery or other manufactured article as well as the real estate upon which it is to be located, then the registration of such instrument shall be notice to all persons thereafter dealing with or acquiring any right or interest in such machinery or other manufactured article, or the realty upon which such machinery is located, etc.

[1] It is urged by the appellant that this article applies, and that inasmuch as the chattel mortgage of the intervener did not describe the real estate upon which was located the building in which the machinery was placed, and inasmuch as the evidence tends to show that the machinery was attached, or at least was intended to be attached, to the realty, that the filing of the chattel mortgage, without a description of the realty, was not constructive notice to the appellant of the lien sought to be foreclosed by the intervener.

[2] Appellee urges that said amended article was passed for the protection of vendors of machinery sold for the purpose of being thereafter attached to the realty, and this purpose is indicated by the emergency clause of the original act as found in section 5661, Rev. Civ. Statutes of 1911. We are of the opinion that appellant is in no position to claim a priority of lien by reason of the facts stated, inasmuch as he did not own the realty upon which the building was located. The building was only personal property. Moreover, it is evidently intended by the wording of the chattel mortgage that the machinery should remain as personal property until it was paid for.

In Murray Co. v. Simmons (Tex. Com. App.) 229 S. W. 461, it was held by the Supreme Court that where machinery was sold under an agreement that it should remain personalty and be subject to removal, and a chattel mortgage was given containing this agreement, and it was further shown that this machinery could be moved without damage to the realty, it did not become part of the realty under the doctrine of fixtures. This holding was under a contract made prior to the amendment of 1917 (Laws 1917, c. 153, § 1) to article 5661. It clearly appears from the emergency clause of the original article that it was not the intention of the Legislature in amending the article to take away any rights that the mortgagee of the machinery had at that time; but, on the other hand, the language used in the original as well as in the amended article clearly shows that the Legislature fully intended to extend further protection to the rights of such mortgagee. We believe that upon the authorities cited, as well as others to the same effect, the assignment should be overruled.

[3-5] Appellant urges that the trial court erred in not requiring appellee to first exhaust its remedy for the collection of its debt against the note put up by Roe as collateral. It is sufficient to say that plaintiff did not invoke the doctrine of marshaling of assets. A party claiming the benefit of marshaling must allege such facts as entitle him thereto, and especially if the fund to which the paramount creditor alone has recourse is adequate to satisfy his debt. 26 Cyc. p. 937, and authorities cited; Silverberg v. Trilling, 82 Tex. 523, 525, 526, 18 S. W. 591. This defense or remedy cannot be raised for the first time in the appellate court. Silverberg v. Trilling, supra. It is not to be inferred that one selling machinery to a tenant intended to enhance the value of the freeholder. Cullers & Henry v. James, 66 Tex. 494, 1 S. W. 314; Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 911; O'Neal v. Quilter, 111 Tex. 345, 234 S. W. 528, by the Supreme Court.

Nor do we think that there was any waiver by intervener of his lien under the chattel mortgage, by reason of certain statements made and actions done by it, on an occasion when the intervener's agent had removed from the building the machinery in question, and the appellant objected, and they placed the machinery back in the building. Plaintiff below testified that in September, 1921, he was notified that some of the representatives of intervener were attempting to move the machinery out of the building, and he went down to the building; that the employees of intervener had taken the machinery out of the building and had it on a truck, and he told them that he could not permit that stuff to be taken away without the rent being paid; that Mr. Hughes and Mr. Elliott, representatives of intervener, said they did not want to escape any rent bills, and they would gladly replace it in the

building at their expense and let it stay there until the rent was paid. They did put the machinery back into the building and bolted it down to the cement foundation, etc.

Mr. Hughes, for the intervener, testified: That he was not sure that he was in Breckenridge on the day when the controversy arose out of the removal of the machinery from the building, but was in the town in a day or two. That he talked to Mr. David and asked him what was the trouble. That David wanted $500 for the back rent, and he told him that was too much, but he would let it rock along. That he believed the agreement was that they would move the machinery back into the building, and he told him that they would leave it there until they could arrive at some agreement on the rent. It was very exorbitant. That a man named Madden had charge of this machinery, and he was called away on account of sickness, and the intervener left the machinery in the building until it could get in touch with Madden to see just what arrangement he had made with David. He had paid some rent, and intervener wanted to know what the rental was, how much was due, and whether there was a contract signed for it. That David was later paid all claims for rent up to the time the machinery was sold to Roe. He denied that he agreed with plaintiff to leave the machinery in the building until all the rent claimed was paid. That this conversation occurred before they sold the machinery to Roe. Hughes testified that this conversation about the rent occurred before April 15, 1921, on which latter date they sold the property to Roe. It appears that plaintiff purchased the building on August 2, 1921, but prior to that time the building was owned by the Henley Lumber & Supply Company, which later became bankrupt, and that plaintiff owned some stock in that concern and was the attorney for it.

[6] We are required to presume that the trial court found in favor of the intervener below upon any question supported by evidence; and since the evidence of the defendant's witness indicates that this conversation and controversy occurred before the plaintiff below had acquired the building, we would be required to find in support of the judgment that the trial court so found.

[7] Appellant urges that the chattel mortgage filed with the county clerk of Stephens county on April 18, 1921, and under which the intervener claimed the lien, was recorded is if the intervener was the mortgagee. One who leaves an instrument with the county clerk for filing and for record in the county clerk's office, and pays the fee therefor, is not responsible for the failure of the clerk to record the same, or even to file it, or if the clerk records it in a wrong book. 34 Cyc. p. 588; Holman v. Chevaillier, 14 Tex. 337; article 6791, Rev. Civ. Stats.; Car-

lisle & Co. v. King (Tex. Civ. App.) 122 S. W. 581, also Supreme Court opinion in 103 Tex. 620, 133 S. W. 241; Bank v. Trust Co. (Tex. Civ. App.) 186 S. W. 361; Kennard v. Mabry, 78 Tex. 157, 14 S. W. 272.

Without discussing other assignments in appellant's brief, we will state that we have carefully examined all of the assignments and do not find any reversible error.

Therefore, all assignments of error are overruled, and the judgment of the trial court is affirmed.