## CARSON et al. v. McFARLAND et al.
### No. 11705.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 29, 1947.

Rehearing Denied Nov. 26, 1947.

David E. Hume, of Eagle Pass, and David Hume, of Dallas, for appellants.

Ben V. King, of Eagle Pass, and W. P. Wallace, Jr., of Del Rio, for appellees.

SMITH, Chief Justice.

Dr. Van. E. McFarland and wife, Olive, lived in the City of Eagle Pass, Maverick County, and used their residence property as their homestead from the year 1919 until Mrs. McFarland's death in November, 1939, and Dr. McFarland's death on June 27, 1942. Both died intestate. Sam Schwartz was appointed administrator of the estate surviving to Dr. McFarland. At the time of his death Dr. McFarland was insolvent and owed several obligations, including one to The State Bank and Trust Company of Eagle Pass, in liquidation. C. F. Carson and others were trustees of the State Bank and Trust Company's assets.

The question presented by this appeal is that of whether Pauline McFarland, the unmarried daughter, was a constituent member of the family of Dr. McFarland at the time of his death, and as such is she entitled to the constitutional homestead exemption, and is the property involved exempt from execution or forced sale in satisfaction of an approved claim against the family estate?

The claimed exemption rests upon the provision of Article 3485, R.S.1925, as follows: "Art. 3485, 3413, 2046, 1993. At the first term of the court after an inventory, appraisement and list of claims have been returned, the court shall by an order entered upon the minutes, set apart for the use and benefit of widow and minor children and unmarried daughter *remaining with the family* of the deceased, all such property of the estate as may be exempt from execution or forced sale by the constitution and laws of the State with the exception of any exemption of one year's supply of provisions." (Italics ours.)

The case was tried before the court without a jury and at the beginning of the trial the following stipulation was entered into:

"It is agreed and stipulated by and between the plaintiffs and the defendants that Dr. Van E. McFarland and his wife, Olive McFarland, owned and occupied the real estate described in plaintiff's petition as their homestead for many years prior to

the death of Olive McFarland in November, 1939, and that, following her death, Dr. Van. E. McFarland continued at all times to occupy said property as his homestead, and as the surviving spouse, until the time of his death, June 27, 1942.

"It is further agreed that Pauline McFarland is the daughter of Dr. Van E. McFarland and Olive McFarland, and is now and at all times has been an unmarried female, and that if the Court finds that she was remaining with the deceased Van E. McFarland as a constituent member of his family at the time of his death, then all property, real and personal described in plaintiffs' petition is exempt from execution or forced sale by the Constitution and laws of this state, and plaintiffs are entitled to judgment herein, and that the Probate Court was without jurisdiction to administer an order of sale of all or any of said property. * * *"

The trial judge found the following facts:

"The evidence conclusively establishes that with the exception of approximately the period of time for a school year the plaintiff, Pauline McFarland, was a constituent member of the family of Dr. Van E. McFarland and wife, and resided in their homestead, with said exception, continuously until the death of Mrs. Olive McFarland in November, 1939. The exception alluded to in nowise disturbed her status as a member or constituent of the family. Shortly after the death of her mother, in November, 1939, plaintiff, Pauline McFarland, in order to recuperate from the strain of having cared for her mother for a substantial period of time during her last illness, went to Kerrville and visited her sister for a relatively short period of time, and a short while later entered Draughon's Business College in Dallas.

"Prompted by a patriotic impulse to do her part in the world-wide struggle which soon was forthcoming, in the late winter of 1940-'41, or in the early spring of 1941, she took the United States Civil Service examination and tendered her services in any secretarial capacity desired. In May, 1941, at the time when the President declared a National Emergency, she was tendered a position in one of the branches of service with the United States Army Forces in the War Department of the Federal Government and promptly accepted. She worked in Washington until that department, with which she was connected, was moved to North Carolina, in 1942, and she continued to work in that employment until the condition of her health required her resignation in the year 1943. During this period of time she twice returned to Eagle Pass for short visits; but, until the sale of the homestead property of Dr. McFarland and wife, she maintained her room in the home and kept stored therein her clothing and other personal possessions. Her income tax returns were continuously filed in the district showing Eagle Pass, Texas, to be her home; her contracts, etc., with the government all reflected Eagle Pass, Texas, as her home, and she voted absentee ballots in elections in Maverick County, and her testimony definitely establishes the fact that at no time did she ever claim or intend to establish any residence other than that of the family residence in the City of Eagle Pass as her homestead. * * *

"I find that at the time of and prior to the death of Dr. Van E. McFarland, on June 27, 1942, Pauline McFarland, his daughter, was an unmarried female, and a constituent member of his family."

Upon these findings the trial judge made the following conclusions of law:

"Based upon the stipulation of the parties, the evidence introduced and the findings of fact, I conclude:

"First: That all of the property, real and personal, described in plaintiffs' petition, was and is exempt from execution or forced sale by the Constitution and laws of this state.

"Second: That the County Court of Maverick County, sitting in probate, was without jurisdiction to administer said property and order a sale thereof in satisfaction of any allowed claim against the Estate of Van E. McFarland, Deceased, not secured by contract lien upon said property.

"Third: That the order or orders of the County Court of Maverick County, Texas,

sitting in probate, attempting to administer said property and order a sale thereof, were and are void for want of jurisdiction.

"Fourth: That the plaintiffs are entitled to recover as prayed for in their petition."

■■ We are of the opinion that the testimony in the case fully supports the findings and conclusions of the trial judge and accordingly the judgment should be affirmed. This conclusion on our part is in line with the authorities cited by appellees which hold, uniformly, that our exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant. 22 Am.Jur. § 7, p. 10; 18 Tex.Jur. § 4, p. 804; Cullers and Henry v. Libbie James, 66 Tex. 494, 1 S.W. 314. Other decisions in line with the foregoing are: Clark v. Vitz, Tex.Civ.App., 190 S.W.2d 736; Malone v. Kennedy, Tex.Civ.App., 272 S. W. 509; Allison v. Brookshire, 38 Tex. 199; Parker v. Sweet, 60 Tex.Civ. App. 10, 127 S.W. 881; Robinson v. Robertson, 2 Willson, Civ.Cas.Ct.App. § 253; Gaddy v. First Nat. Bank, Tex.Civ. App., 283 S.W. 277; Smith v. McBryde, Tex.Civ.App., 173 S.W. 234.

A typical case of the liberalization of the exemption laws is found in Cullers and Henry v. James, supra, in which it was held that a house, even though detached from any particular land, could constitute the homestead of the family. In that case it was said by Associate Justice Robertson [66 Tex. 494, 1 S.W. 315]: "It is contended that the homestead, under the constitution cannot embrace personal property. The exemption is, in terms, of lots or acres of land; but the object was to secure to the family a home. 'House' is necessarily embraced in the word 'homestead.' Franklin v. Coffee, 18 Tex. [413], 417, 70 Am.Dec. 292. If the head of a family owns a house and no interest or estate in the land on which it stands, the house is a chattel. If he occupies it with his family, it is their home. He may be compelled to move it from one lot to another as fast as legal process can oust him, still, though ambulatory, unsatisfactory, and in all its appointments mean; though it advertises the thriftless poverty of its proprietor, and is a caricature of the princely possibility of the exemption laws, —it is the home of a family, and is embraced in the spirit and purpose, if not the letter, of the constitution."

The parties discuss and interpret the meaning of the language of the statute, "unmarried daughters remaining with the family," but there is nevertheless no serious difference between the two definitions propounded by the parties. Appellants cite several cases in support of their view, but when analyzed those cases do not contravene the conclusions we have stated.

The judgment is affirmed.