JOHN M. COOKE v. M. IRENE COOKE.

(Filed 3 December, 1913.)

1. Marriage and Divorce—Statutes—Constitutional Law.

The only limitation on powers of the Legislature in enacting statutes relating to divorce is found in Article II, sec. 10, of the Constitution, which prohibits legislation of this character which is passed for any individual case.

2. Same — Interpretation of Statutes — Party at Fault — Power of Courts—Living Separate and Apart—Divorce a Mensa—Computation of Time.

It being in the exclusive power of the Legislature to regulate the questions of divorce, the courts may not by interpretation interpolate a provision which does not appear in a clearly expressed legislative act; and the Legislature having added a new cause for absolute divorce by chapter 89, Laws 1907, as amended by chapter 165, Laws 1913, as follows: "If there shall have been a separation of husband and wife, and they shall have lived sepa-

rate and apart for ten successive years; and the plaintiff in the suit for divorce shall have resided in this State for that period and no children be born of the marriage and living," the plaintiff in an action for divorce under the conditions named is entitled to a decree in his or her favor, without reference to the question whether the one or the other party was in fault in bringing about the separation; and should a part of the statutory period have been covered by a decree *a mensa et thoro*, this will not be excluded from the computation of the period of time required.

3. **Marriage and Divorce—Interpretation of Statutes—Separation by Consent.**

   It is not necessary to a divorce under the provisions of chapter 89, Laws 1907, amended by chapter 165, Laws 1913, that the separation between husband and wife should have been by mutual consent.

4. **Marriage and Divorce—Interpretation of Statutes—Judgments for Divorce a Mensa—Absolute Divorce—Estoppel.**

   The cancellation of the marriage tie is not included within the scope of the inquiry, issues, verdict, or judgment in an action for divorce *a mensa et thoro*, and such may not be successfully pleaded as an estoppel in a suit for absolute divorce brought under the provisions of chapter 89, Laws·1907, amended by chapter 165, Laws 1913.

BROWN, J., concurring; WALKER, J., dissenting; ALLEN, J., concurring in dissenting opinion.

APPEAL by defendant from *Peebles, J.,* at May Term, 1913, of ALAMANCE.

Civil·action for divorce. The action was to obtain a divorce *a vinculo,* under section 1561, Revisal, subsection 5 of Pell's Revisal, by reason of separation of husband and wife existent for ten successive years, etc.

The suit was originally instituted in Alamance County by summons dated in 1910, and served, returnable to November Term, 1910, of said court, and complaint thereon was duly filed. Pending such suit, the present defendant instituted her action for a divorce from bed and board by reason of wrongful abandonment on the part of plaintiff. That suit was commenced by summons duly served and returnable to September Term, 1911, of the Superior Court of Wake County. At said term the de-

164—18

fendant therein, the present plaintiff, appeared and pleaded in abatement the pendency of the proceedings in Alamance, and further answered, denying the abandonment, etc. The court below held that the answer over had the effect of destroying the plea in abatement, and on issue joined there was verdict and judgment for divorce from bed and board in favor of the plaintiff therein. On appeal, while disapproving the position that to answer over necessarily destroyed the plea in abatement, the judgment on the verdict was affirmed for reasons stated in the opinion. See *Cook v. Cook,* 159 N. C., 46.

The judgment on that appeal having been certified down, the plaintiff suffered a judgment of nonsuit in the original action in Alamance Court, and instituted the present suit by summons served and returnable to Superior Court of said county at April Term, 1913, and complaint having again been duly filed for divorce *a vinculo* under section 1561, Revisal, subsection 5. The defendant appeared, and among other things pleaded the proceedings and judgment of divorce from bed and board obtained in Superior Court of Wake County in bar of plaintiff's suit.

A transcript of the proceedings and judgment in the Wake Court having been put in evidence and admitted by plaintiff in open court to be a true copy, his Honor intimated "that he would charge the jury that the plea of *res adjudicata* as set up in the answer was a finality of the action, and precluded the plaintiff from bringing or maintaining the present suit."

Thereupon the plaintiff, having duly excepted, submitted to a nonsuit and appealed.

*Long & Long, E. S. W. Dameron, W. H. Carroll, and Parker & Parker for plaintiff.*

*R. N. Simms, Brooks, Sapp & Hall for defendant.*

HOKE, J., after stating the case: Subject to the constitutional restriction that "it may not grant a divorce nor secure alimony in any individual case" (Const., Art. II, sec. 10), the question of divorce is a matter exclusively of legislative cognizance, and in the exercise of its powers over the subject the General Assembly of 1907 (chapter 89) added a new cause for absolute di-

vorce, as follows: "If there shall have been a separation of husband and wife, and they shall have lived separate and apart for ten successive years, and they shall have resided in this State for that period, and no children shall have been born of the marriage."

By chapter 165, Laws 1913, this section was amended by "striking out all after the word 'years' in line six (line two of Pell's Revisal, sec. 1651, subsec. 5) and inserting, 'and the plaintiff in the suit for divorce shall have resided in this State for that period, and no children be born of the marriage and living.' "

This statute, express in terms and plain of meaning, is broad enough to include, and clearly does include, any kind of separation by which the marital association is severed and which may be made the subject of further judicial investigation. There is nothing in the law to indicate that the right conferred is dependent on the blame which may attach to the one party or the other, nor that the time which may be covered by a judicial decree of divorce from bed and board shall be excluded from the statutory period, nor which permits the interpretation chiefly insisted upon by defendant, that the statute only applies when there has been a separation by mutual consent of the parties. But in the language of the statute, this cause for divorce shall prevail whenever—

"1. There has been a separation of husband and wife.

"2. When they have lived apart for ten successive years.

"3. When the plaintiff shall have resided in this State for that period.

"4. No children be born of the marriage and living."

And the Legislature having thus formally and clearly expressed its will, the Court is not at liberty to interpolate or superimpose conditions and limitations which the statute itself does not contain.

This being the correct construction of the law, we are of opinion that the proceedings and judgment in the Superior Court of Wake County offered in evidence by the present defendant, and in which she was awarded a divorce from bed and

board on the ground of wrongful abandonment on the part of plaintiff, her husband, cannot be allowed to affect the course or results of the present trial.   Not the decree, for it does not profess to sever the marital tie; that was not the question then presented, and on that record the court had no jurisdiction to award it.   Not the verdict, on which the decree was based, for the fact of abandonment being, as we have seen, irrelevant to the present issue, the judicial ascertainment of such fact would lend it no significance.   As heretofore indicated, it was chiefly urged for the defendant that the statute under which present proceedings are instituted only applies when the separation has been by mutual consent of parties, citing certain decisions from the Wisconsin courts, *Thompson v. Thompson,* 53 Wis., 153; *Cole v. Cole,* 27 Wis., 531, and the definition of the word, "separation" appearing in Black's Law Dictionary, etc.   From a perusal of the Wisconsin decisions, it appears that the statute of that State contained express provision that the separation must be by mutual consent; and while the term "separation" has obtained the restricted meaning of a voluntary separation from being frequently so used in judicial proceedings, in its more usual sense it extends to and includes any kind of separation by which the marital association is severed:   "The living asunder of man and wife."   25 A. and E. Enc. Law, p. 432, citing Wharton and Jackson Law Dictionary.   "If there shall have been a separation of husband and wife" is the language of the statute, and it clearly contemplates the primary and broader acceptation of the term.

Again, it was contended that a proceeding for divorce deals with and is designed to affect the status of the parties, and that the judgment in Wake has established this status to be a legal separation from bed and board, and not otherwise; and further, that the time of such separation under and by virtue of that decree may not be properly counted as part of the statutory period.   The premise here is undoubtedly sound.   Divorce proceedings concern chiefly the status of the parties, but this action in Wake County did not deal, and the court acquired no jurisdiction to deal, with the marriage tie.   The decree only estab-

lished a legal separation of the parties for the time, and it is very generally held that such a decree does not bar the right to an absolute divorce when the statutory conditions for such a divorce are properly established. *Evans v. Evans,* 43 Minn., 31; *Edgerly v. Edgerly,* 112 Mass., 53; *Green v. Green,* L. R. Courts, Pro. Div., 121; *Mason v. Mason,* L. R., Pro. Div., 121. True, in some of these cases it is held that such divorce can only be obtained on facts subsequent to the former decree, and that as to all former facts the parties are concluded. But this limitation should only prevail when such former facts have legal bearing on the second inquiry, and does not affect the case presented here, where, as we have seen, neither the decree itself nor the fact on which it is predicated is relevant to the issue.

It is suggested, in this connection, that decrees for absolute divorce in a proceeding of this character will likely and at times necessarily bring about perplexing conflicts with the terms and conditions imposed by former decrees of divorce from bed and board, and more particularly in reference to allowances for alimony and certain proprietary rights still existent in cases of such decrees.

We do not now see that any such conflicts will necessarily arise; but, if they do, the relief sought and the changes required in the law may not be made here. And so, as to the time covered by these decrees, the law, as we have seen, makes no such exception, and the courts are not at liberty to add to the statute what the Legislature has not seen fit to provide.

And the same answer may be made to another position submitted for defendant: that the plaintiff wrongfully abandoned defendant, and should not be allowed to take advantage of conditions brought about by his own misconduct. This general principle has been recognized in some of our former decisions, but, in the recent case of *Ellett v. Ellett,* 157 N. C., 161, it was held to be unsound where, as in the present case, the Legislature has conferred the right of absolute divorce on the existence of certain specific facts or conditions, and it appears from the provisions of the law that the incipient blame of the one party or the other is not to affect the question.

COOKE *v.* COOKE.

The public policy which finds expression in this statute rests on the assumption that it is not well for persons in these circumstances to be absolutely deprived of all right to marry again; and where it has been sufficiently demonstrated by ten years separation that a reconciliation will not occur, and there are no living children to be affected, the lawmakers have deemed it expedient and right to establish this as a cause for absolute divorce. They have not seen fit to make any exception in favor of the injured party nor to exclude the time covered by decree for a limited divorce; and, this being true, we must administer the law as we find it, and if it proves to be unwise in policy or undesirable in results, it must be changed by the legislative department, which is given full and exclusive cognizance of the subject.

Reversed.

BROWN, J., concurring: I concur fully in the opinion of the Court by *Justice Hoke*. It clearly demonstrates that under the act of 1907, as amended, the fact of separation for ten successive years, the residence of the plaintiff within this State for that period, and that there are no living children of the marriage, are all the facts required to be alleged or proved to support a decree for divorce *a vinculo*.

It is contended that the plaintiff must allege and prove that the plaintiff is the injured party. There are no such words in the act, although they are and have been in the Revisal long prior to the act of 1907.

I think those words plainly apply only to those causes of action which grow out of the personal misconduct of the parties. They would be out of place in the act of 1907, and are entirely inconsistent with its spirit and purpose. That act does not create a cause for divorce, so to speak, but only a ground for the annulment of the marriage tie.

As the opinion of the Court points out, this act differs in its language from other somewhat similar statutes, in that it uses the past tense: "and they shall have lived apart for ten successive years."

It is impossible to conceive that after the expiration of so long a period the Legislature intended that the married life of the parties should be opened up and the dread skeleton of an unhappy past be resurrected and displayed in all its nakedness to the public gaze.

*Cui bono?* The parties have been separated so long that reconciliation is hopeless, and there are no children to be concerned. Why expose their unhappy past? There may have been no disgraceful wrong on the part of either, only irreconcilable differences.

It is plain to me that the object of the act is to annul the marriage tie, and to give such unfortunate persons an opportunity to marry again, and perchance to make a happy and congenial union, as such relation leads to virtue and unselfishness and makes better and more useful citizens.

After ten long years of separation, why inquire into whose fault it was? Why dig up from their graves the buried memories of broken lives?

It is better to let the dead past bury its dead, and not disturb the remains. Such was evidently the wise and humane purpose of the Legislature.

WALKER, J., dissenting: It is always a matter for regret when I am called upon, even by my sense of duty and a strong desire that justice may always prevail, to differ with my brethren. This is a very important question, and the result which has been reached by the majority, if in accordance with the law and compelled by its edict, as supposed, is not in harmony with right and equity.

I think the opinion of the Court is erroneous in several respects:

1. The Legislature, as I will presently show, and try to demonstrate, expressly provided that a suit of this kind can be brought only by the party injured.

2. If this were not so, the amendment of 1907 should be confined strictly to separation of husband and wife, and not extended to those who have been previously divorced.

3. The time elapsing since the Wake decree of divorce from bed and board should not be counted, in which event, ten years had not expired at the commencement of this action.

First. The act of 1907, being chapter 89, amends, and purports on its face to amend, section 1561 of the Revisal, and Judge Pell, in his annotated edition, has given this enactment its proper place in that section.  (Pell's Rev., sec. 1561, subsec. 5).  Section 1561, in its first paragraph, and before enumerating the causes for divorce *a vinculo;* each being placed separately in the five succeeding subdivisions, provides as follows:  "Marriage may be dissolved and the parties thereto divorced from the bond of matrimony on application of the party injured, made as by law provided, in the following cases."  Among the "following cases" occurs the cause for divorce given by the act of 1907, it being in the fifth subsection.  So that if interpreted according to its setting in that section, and controlled and qualified by what precedes and is applicable to all the causes alike, the provision of the act of 1907 is subject to the restriction contained in the first clause of the section, which requires that the application for the dissolution of the marriage and the divorce of the parties shall be made only by "the party injured."

The act of 1907 provides that "Revisal, sec. 1561, be amended by adding thereto the following," and then comes the new enactment as to ten years separation. The law in regard to such an amendment and the future construction of the section thus amended has been conclusively settled by the highest authority. Cyc., vol. 36, p. 1165, says that an amended act is to be construed "as if the original statute had been repealed, and a new and independent act, in the amended form, had been adopted in its stead; or, as frequently stated by the courts, so far as regards any action after the adoption of the amendment, it is the same as if the statute had been originally enacted in its amended form." We find this familiar doctrine stated explicitly and concisely in Black's Inter. of Laws, p. 356 *et seq.,* secs. 130, 132. He says: "(1) An original act and an amendment to it should be read and construed as one act.  (2) An amended statute is to

be construed as if it had read from the beginning as it does with the amendments added to it or incorporated in it. (3) An amendatory statute is to be confined, in its scope and operation, to the limits of the act to which it is an amendment, unless the intention of the Legislature to give it a wider field of operation is manifest." And again: "4. In the construction of a statute, in order to determine the true intention of the Legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts." Page 166, sec. 74.

There are many cases sustaining the validity and universality of these rules of interpretation. *Dimpfel v. Beam,* 41 Col., 25; *McGuire v. R. R.,* 131 Iowa, 340; *People v. R. R.,* 145 Mich., 140; *Kamerick v. Castleman,* 21 Mo. App., 587; *Campbell v. Youngson,* 80 Neb., 322; *Cortesy v. Territory,* 7 N. M., 89; *McKibbon v. Lester,* 9 Ohio St., 627; *Holbrook v. Nichol,* 36 Ill., 161; *S. v. Express Co.,* 171 Ind., 138; *Epperson v. Insurance Co.,* 90 Mo. App., 432; *Farrell v. State,* 54 N. J. L., 421. Some of these decisions have applied the principle concretely to cases just like this one. "As to subsequent events, an amendment to a statute is considered as a part of the original act." *S. v. Express Co., supra.* "An amendment of a statute operates precisely as though the subject-matter of the amendment had been *originally* embodied in the statute amended, as regards any action had after its adoption." *Holbrook v. Nichol, supra.* "A statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendment had always been there; and the amendment itself so thoroughly becomes a part of the original statute that it must be construed, in view of the original statute, as it stands after the amendments are introduced." *Farrell v. State, supra.* "An amendment to a statute will generally be considered as a part of the original act, and the entire act as amended be given the construction which would be given it if the amendment were a part of the original act." *People v. R. R., supra.* The case of *McKibbon v. Lester, supra,* holds that where there is an amendment of an act having

originally a clause of restriction or limitation, the matter introduced into it by the amendment is, of course, subject to the same restriction or qualification as the other parts of the act.

The clear result from these authorities is that the fifth clause, as shown in Pell's Revisal, sec. 1561, it being the act of 1907, is subject to the qualification which pervades the entire section, namely, that the action for divorce *a vinculo* must be brought by the injured party; and this is in consonance with right and justice. The Legislature had no idea of changing the rule heretofore settled by this Court (*Tew v. Tew,* 80 N. C., 316; *Moss v. Moss,* 24 N. C., 55; *Setzer v. Setzer,* 128 N. C., 170), and give an action to the one who may have been flagrantly in fault; and therefore it did not pass a separate and independent act allowing a divorce after ten years of separation (if even that would have changed the result), but adopted it as an amendment to the original statute, so that it would be subject to its beneficent restrictions and work no wrong or oppression to the faithful and blameless spouse.

But if there could be any doubt as to the correct meaning of the act, we are admonished by other rules of statutory interpretation that the law should be so construed as to prevent "absurd or unjust consequences." With regard to a doubtful or ambiguous statute, the presumption should always be indulged that the legislative intention was to enact "a valid, sensible, and just law, and one which should change the prior law no further than may be necessary to effectuate the specific purpose of the act in question, and the construction should be in harmony with this assumption." Black Int. of Laws, secs. 41, 46, 47. There is also a presumption against an intention to cause a private hardship (section 47), or to enact contrary to a sound public policy and the interests of public morality, or to make any changes in the present law except only to the extent specified in the amendment (sections 47, 50, 52). There is also a presumption that the Legislature did not intend that the law should be inconsistent or discriminatory, but that it should be consistent in all its provisions, and that the amendment should be in harmony with the preëxisting body of the law (section 44).

In the construction of the statute, as amended, and in order to determine the real intention of the Legislature, and its true meaning, the statute should be construed as a whole, each part being given its proper function, and its bearing upon the entire act or section, if such it be. Black, sec. 74. In applying these principles to the facts of this case, we must not forget that the provision of 1907 as to separation is not an independent act, to be construed and to operate as such, but it is an amendment to section 1561 of the Revisal, and is so expressly declared to be. This was purposely done, so that the just rule of the law, giving the action to the party injured, might prevail in this case as in others of a like kind. What sound reason for restricting the right of action for the other four causes to the injured party that does not equally apply to the fifth, which is created by the act of 1907? None at all. It makes no difference what the nature of the offense may be upon which the application is based, the cause of action should, in good morals and in simple justice, belong only to the party who has been wronged. Applying these rules, or any of them, to the statute, and it should read, that a marriage may be dissolved and divorce granted in the following five cases, provided the "application is made by the party injured." This is what the Legislature has plainly said; it is what is manifestly meant, and it is in harmony with prior decisions of this Court and with the eternal principle of right and equity.

Unless we are compelled to do so by inevitable interpretation, we should not give this cause of action to one who has done his wife so grave a wrong, of which he has been convicted by a court of justice and a partial divorce granted therefor. The record imports verity, and it finds that he "unlawfully, unjustly, and cruelly abandoned his wife"—deserted her without cause and refused to support her. He caused the separation himself, and now asks that it be made permanent. We shrink from the contemplation of such injustice, even if his case is accidentally good in law, and turn instinctively to inquire if such it can be. But happily, for the sake of offended justice, it is found that the statute, in plain terms, as I think, bars his right to any relief.

The law is still strong to protect this woman against his iniquitous pursuits of her, taking advantage of his own wrong, and drives him back at the very door of the temple.

We think the meaning and intention of the Legislature are clearly expressed in the way I have indicated; but if not, and the act is ambiguous, the Court should resort to the established rule of presumption, that the lawmaking body never intends to do injustice or to make unfair discrimination among those equally entitled to its favorable consideration, and the courts should adopt that construction which will avoid any such result. Black Inter. of Law, p. 100, sec. 46. And for this purpose it has recourse to the original statute, which is amended, and considers the amendment with reference to its general scope and purpose. Black, p. 356, sec. 130.

Second. But he should go out of court on another ground. The lexicographers define a separation as a cessation of cohabitation by husband and wife by the act of the parties or one of them (Black's Dict., p. 1080), and not by the act of the law, which is technically and legally considered as a *divorce.* Black, at p. 382, defines divorce as "the legal separation of man and wife, effected, for cause, by the judgment of a court, and either totally dissolving the marriage relation or suspending its effects so far as concerns the cohabitation of the parties." And this is the popular notion. Besides, the statute itself makes a clear distinction between the two—divorce and separation. Revisal, secs. 2110, 2111, 2116. "Words found in the original act will be presumed to be used in the same sense in the amendment." 36 Cyc., 1165. The two are really placed in separate chapters. Certain rights are incident to a divorce which do not pertain to a voluntary separation or one brought about by the wrongful act of either spouse.

If "separation" includes divorce *a mensa,* and stands upon the same footing, it is a strange inconsistency that the statute allows the complaint in a divorce *a mensa* to be made only by the injured party, and it does not require it in this case.

But whatever may be said about it, there is plenty of room for a construction that will prevent such an anomaly, if not

enormity, as to permit this plaintiff to take advantage of his own willful wrong in causing the separation and convert it into a good and lawful cause of action. We believe the law is plainly the other way, on its face, and by every pertinent and well settled rule of statutory interpretation. How utterly contrary to our ideas of judicial procedure, that the law should decree a thing to be lawful, in favor of one of the parties, and then make that same thing an instrument in the hands of the wrongdoer to undo its own work and permit him to use it for his own gain and advantage, to the oppression of the other party! That is turning a wrong into a right, and as to her, "it is holding the promise to the ear and breaking it to the hope."

Third. The time which elapsed under the operation of the divorce decree should not be counted. We have shown what a strange anomaly it would produce; but apart from this consideration, the very language of the statute shows that it was not intended to be applied in such cases, and only to those where the separation has been caused by a nonjudicial act. It is true that although a partial divorce has been granted, the injured party may afterwards obtain an absolute divorce or one *a vinculo,* for sufficient cause. In the cases cited by the Court in its opinion, the decree was given only to the injured party, and he was not allowed to set up any cause involved in the first suit. One of the allegations in the former suit by the defendant against the plaintiff in Wake Superior Court was the desertion and separation of the husband and his cruel treatment of her. This passed into the issue and the decree.

*Ellett v. Ellett,* 157 N. C., 161, is easily distinguished from this case, and rests upon a peculiar ground which does not underlie it. Here the wife has done no such positive wrong as was shown to have been committed by the wife in *Ellett's case.* She is perfectly innocent of any wrongdoing, and is altogether the aggrieved party. It was only held in *Ellett's case* that the previous conduct in banishing his wife from their home did not justify her in afterwards committing adultery, no more than it would be justifiable for a widow or a single woman to do so. In regard to the two offenses, this Court held that of the hus-

band merely trivial in comparison with the graver and more serious offense of his wife, which was not excused, if palliated, by his act, the evil consequences of which, it was said, could largely be prevented or offset by requiring the husband to provide for her maintenance and support under the statute, and by order of the court, if she cared to apply for it, relying upon the case of *Steele v. Steele,* 104 N. C., 636. It is not necessary to inquire whether this is a valid reason, for suffice it to say that neither those facts, the reason, nor the decision have any relevancy to this case. The defendant has done nothing contrary to her duty and obligation as a wife, and her husband has, by the decree of the court, been found recreant to his duty and false to his marriage vow. The two cases, as we see, are widely separated in principle by their distinctive facts. *Ellett v. Ellett,* therefore, is not in the way, and aside from the plain meaning of the statute and its positive requirement, the plaintiff should be required, under our decisions, to show himself blameless, or, at least, that he is the wronged and not the guilty party.

There can be no question, it seems to me, that plaintiff is estopped by the Wake decree. So far as the record shows, the issue as to the abandonment of his wife in August, 1900, was fairly raised by the pleadings in that case, and fairly submitted to the jury, and they found against him. It was suggested that the court refused to hear his plea of former suit pending unless he first withdrew his answer to the merits. That does not appear; but if it did, there would be no difference wrought by it in the result, for he did not withdraw it, and he then had a fair opportunity to present his defense upon the issues submitted. We must assume conclusively that the trial was conducted regularly and according to the usual course and practice of the court, in the absence of any finding in the record to the contrary or any motion or any proceeding to vacate the judgment. It cannot be impeached collaterally. "The general rule is that the judgment or decree of a court having general jurisdiction over the subject-matter, subsisting unreversed, must be respected, and in collateral suits sustains all things done under it, notwith-

standing any irregularity in the course of the proceedings or error in the decision." *Yarborough v. Moore,* 151 N. C., 116; *Millsaps v. Estes,* 137 N. C., 536; *Doyle v. Brown,* 72 N. C., 393; *Williams v. Harrington,* 33 N. C., 616; *Harrison v. Hargrove,* 120 N. C., 96; *Rackley v. Roberts,* 147 N. C., 201; *McDonald v. Hoffman,* 153 N. C., 254. It is established, by the estoppel of the judgment or the principle of *res judicata,* that plaintiff is not the injured party, but the one who caused all the trouble, and he should not be allowed to profit by his wrongdoing. This decision will be a precedent for any evil-minded husband to desert or abandon his wife for the very purpose of benefiting by the statute after ten years of his wrongful separation. The Legislature never intended any such result, or contemplated the spectacle of a man reaping the benefit and reward of his own betrayal, and cruel treatment, of his wife with the sanction of law.

Why should the law favor the husband, who deliberately and cruelly (as the jury found) abandons his wife, without just cause or excuse, and leave her without support, in preference to one who commits any other offense against his wife, or violates his marital duty, and for which she is entitled to an absolute divorce? There is no reason for any such distinction, and the Legislature adopted the form of an amendment to section 1561 to prevent it, and to bring all faithless husbands under the same rule of exclusion from the courts, by requiring that a suit may be brought *only* by him or her who has been wronged.

JUSTICE ALLEN concurs in this opinion.