CLARA SCHULZ v. L. E. WHITHAM & COMPANY.

No. 5407.   Decided April 30, 1930.
(27 S. W., 2d Series, 1093.)

212

*Kilgore, Rogers & Thornton,* for plaintiffs in error.

The Honorable Court of Civil Appeals has erred in its holding as a matter of law, that the property was not the homestead of J. T. Vick and family at the time defendants in error sought to create a lien thereon, in view of the findings of fact, that at such time Dr. and Mrs. Vick were married de jure, he for a long period of time had lived upon the property as his home, and at all times recognized his legal and moral duty to support her and in fact over said period of time did support her, there being no evidence to show whose fault occasioned the temporary estrangement. Woods v. Alvarado State Bank, 275 S. W., 187; Crutcher v. Saunders, 145 S. W., 658; Markley v. Barlow, 204 S. W., 1013; Wheat v. Owens, 15 Texas, 242; Sears v. Sears, 45 Texas, 557.

*Milburn E. Nutt, Carrigan, Britain, Morgan & King* and *E. R. Surles,* for defendants.

The undisputed evidence having shown that prior to and at all times since J. T. Vick purchased said lot, he and his wife were permanently separated, and that she resided in Oklahoma and had never lived with him on said property, and that he had never claimed it as a homestead, and that all the requirements of the charter of the City of Wichita Falls had been followed in the issuance of the paving certificate against J. T. Vick as the owner of said property, the Court erred in holding that said paving certificate was not a valid and enforceable first and prior lien upon said premises, superior to appellee's vendor's lien. Marriott v. Corder, 4 S. W., (2nd) 213; Nalle v. Eaves, 5 S. W. (2nd), 500; Linares v. Linares, 93 Texas, 84, 53 S. W., 579; R. S. Art. 1090–1091.

Mr. Chief Justice CURETON delivered the opinion of the Court.

The only material question for review in this case is whether or not the property in controversy was in fact the homestead of Dr. Vick at the time the pavement assessment lien or mechanic's lien for pavement work of the defendant in error arose. The uncontradicted evidence shows that Dr. Vick bought the land in question from Clara Schulz, who reserved a vendor's lien to secure a part of the purchase price, and that at the time he bought the property he was married, with adult children, all of whom were married and constituted no part of his family. For some time prior to the purchase of this property he and his wife had not lived together, but he recognized his moral and legal duty to her as his wife to

support her, and the evidence shows that he was supporting her at the time, and continued to do so down to the time of the trial of this case. Within about thirty days after Dr. Vick purchased the property, he moved on it, and lived there, and was living there in his own house on the property at the time of the bringing of this suit. His wife never lived on the property, although on one occasion, while he was sick, she visited him for a short time. After several months' use of this property as his home, Dr. Vick executed a mechanic's lien to the defendant in error, to secure it for the paving cost, and the cross action brought by the defendant in error, L. E. Whitham & Company, was upon this instrument as well as upon the paving assessment levied against the property by the City. The mechanic's lien was not executed by Dr. Vick's wife. The defendant in error, however, claims that its lien 'to secure the paving assessment, or cost of paving construction, is superior to that of the plaintiff in error, upon the ground that the property was not homestead property at the time the assessment was levied against it, nor at the time that Dr. Vick executed the mechanic's lien. The trial resulted in a judgment, in so far as the homestead question is concerned, in favor of the plaintiff in error, and the defendant in error, L. E. Whitham & Company, prosecuted an appeal to the Court of Civil Appeals, where that portion of the judgment was reversed and rendered. The case was tried in February, 1928, at which time Dr. Vick had been living in Wichita Falls for six years. He bought the property on the 14th of April, 1925, and moved into the house as shown above. If the facts entitled Dr. Vick to a homestead, the property became homestead at the time he moved on to it. He was married, as stated before, at the time he bought the property and moved into the house, and has been continuously ever since. He testified in part:

"From about thirty days after I bought the house, and moved in, I have lived in the house; I still live in it; I have one room there, my family is not there. I have had my room there since 30 days after I bought it. I was so using it ever since I moved in; and was so using it in April, on the 16th of April, 1926. I have been all the time since then.

＊　＊　＊　＊　＊　＊

"I am the same J. T. Vick who is named one of the defendants in this case. I am a defendant as well as L. E. Whitham and company. I said that I moved in it thirty days after I bought it and have remained there. I am a married man. I am not living with

my wife at this time. It has been five years since I lived with my wife; yes, it is a fact that I became separated from my wife about five years ago; as to whether that separation was permanent, well I suppose so, we have not gone back together. We have not had any relations as husband and wife. I take care of her is all, but I have been separated from her. I have not lived with her since that time. She has never lived with me in the property. She came to the house one time when I was in bed sick, that was either in 1926 or 1925. She stayed there about 10 minutes, came to the house— just came to the sick room a few minutes. I do not occupy the place now, other than one room. I let a lady stay there to do my cooking. As to whether I have the use of the entire house or just one room in the house, well just one room, and in the dining room of course I come to my meals. I have exclusive control over only one room in the house. I signed a mechanic's lien contract in favor of L. E. Whitham & Company for pavement improvements. At the time that I signed that my wife and I had permanently separated. I did not claim that as a homestead at that time. I have never claimed it as a homestead since that time, nor has any part of my family resided there. I am the only member of my family that has resided there in that house at any time and I occupied it only as a single man—I have not formally gone ahead and got a divorce myself, but I have no legal connection—I am not connected with my wife, except I am still legally married, and supporting her. My wife lives in separate property, separate and apart from me. She lives in Healdton, Oklahoma, and has never resided in any part of those premises.

\* \* \* \* \* \*

"During those years I have provided for my wife; I have taken care of her. I do not have any unmarried children. I have only two and they are both married. The housekeeper I have, I simply employ her to take care of the house for me in consideration of her services in cooking my meals, and taking care of the house; she is working for me."

In March, 1927, Dr. Vick deeded the property in controversy to John Davenport and Robert Crane. His wife joined in the execution of that deed at that time, and her acknowledgment was taken. The deed was executed and the acknowledgments taken in Wichita Falls, where Mrs. Vick was until March, 1927. Dr. Vick says, "she just left here in 1927."

The above is all the testimony bearing on the homestead question, except perhaps the mechanic's lien executed by Dr. Vick to secure the paving cost. This instrument was dated April 16, 1926. In the initial paragraph of the instrument is found the following language, which appears in the statement of facts just as it appears in this opinion:

"Dr. J. T. Vick, a single man, owner of Lot 18 in Block 13 of Jalonic Addition, fronting 52.2 feet on North side of sixteen street, in the city of Wichita Falls, Texas, known as number ———— which is ———————— the homestead of the undersigned."

This instrument was not reformed by the decree, and so far as this record is concerned it must be accepted as having been written as was intended. However, in deciding the case we may disregard the recitations quoted above and still reach the same conclusion.

The case was tried before the judge without a jury, and the trial court found that the property at the time the defendant in error sought to impress it with a lien was held and used and occupied by Dr. Vick as a homestead. We agree with the conclusion of the trial judge, and will now state our reasons therefor.

We regard it as settled law that the husband is the head of the family, and as such has the right to select the homestead. 13 R. C. L., p. 557, Sec. 17; Hanes v. Hanes, 239 S. W., 191; Kelley v. Nowlin, 227 S. W., 373; Tackaberry v. City National Bank, 85 Texas, 488; Ward v. Baker, 135 S. W., 620, 623. It is equally clear that if the husband by his acts uses property as a home, it becomes a homestead by dedication, even though he and his wife may both declare to the contrary. Texas Land & Loan Co. v. Blalock, 76 Texas, 85, 89; Ruhl v. Kauffman & Runge, 65 Texas, 723, 734; Ward v. Baker, 135 S. W., 620, 623; Little v. Baker, 11 S. W., 549, 551. Likewise the rule is fixed in this State that the homestead right may attach although the wife may never move upon the property; that it becomes the homestead from the time of its dedication as such by the head of the family. Markley v. Barlow, 204 S. W., 1013, 1014 (Writ Refused); Moores v. Wills, 69 Texas, 113; Henderson v. Ford, 46 Texas, 627; 13 R. C. L., p. 592, Sec. 56. It is equally elementary that the renting of a homestead does not deprive it of its homestead character. Section 51 of Article 16 expressly declares "that any temporary renting of the homestead shall not change the character of the same." Bailey v. Bauknight, 25 S. W., 56; Foreman v. Meroney, 62 Texas, 623. We have also reached the conclusion that the homestead estate exists when the husband resides on the property, even though the

wife absents herself therefrom, so long as the husband recognizes and discharges his moral and legal obligation to support her. Woods v. Alvarado State Bank, 19 S. W. (2d), 35; Hall v. Fields, 81 Texas, 553; Speer & Goodnight v. Sykes, 102 Texas, 451; Zapp v. Strohmeyer, 75 Texas, 638; Shook v. Shook, 145 S. W., 682.

The authorities cited settle the question that although the husband and wife may be divorced, and although the children may have been awarded to her, and may not live with him, yet so long as they are minors, to whom he owes the duty of support, he is entitled to a homestead as the head of a family.

We think the rules which permit the homestead exemption referred to above apply with the same force where the family consists of an absent wife, but to whom the husband owes and discharges the duty of support. If the children, to whom is due and who receive support, can be absent from the parental roof, and the homestead continue to exist, we see no reason why the same rule should not apply when the family consists of husband and absent wife, whom he is bound to and does support. We are not discussing cases where the wife may be estopped to claim her homestead rights, for the reason that there is no such case before us.

Applying the plain rules of law stated above to the facts of the instant case, we think it clear that Dr. Vick was the head of a family and entitled to a homestead. Dr. Vick lived on the property involved, and put it to homestead uses. It is true that he says that he has never claimed it as a homestead, but it is unnecessary for him to claim it. His acts, under the authorities, were a dedication of the place to homestead uses,—if, of course, he was the head of a family. In the case of Little v. Baker, supra, this Court, speaking with reference to the intention of an occupant of premises, said:

"However this may be, there was evidence before the jury of the use of the lot in controversy of a character to make it part of the homestead, and the jury should have been instructed that such use, if proved, made the property the homestead of plaintiffs, without imperilling their case with an investigation of their intentions. When a homestead is once acquired by actual use, it will not be lost, while the occupancy or use continues, by an intention not to continue such occupancy or use. The value of the exemption would be seriously impaired, if it could be affected by such evidence." 11 S. W., 551.

Other authorities cited abundantly support the conclusion that property may become homestead by virtue of dedication through occupancy as a home, and that the declarations of intention do not

control the question where there has been actual occupancy. The authorities cited above show clearly that, even though the wife has never been upon the homestead property when it has been dedicated to homestead purposes, it is nevertheless the homestead. The record discloses without dispute the support of his absent wife by Dr. Vick. We think what has been said in Hall v. Fields, and other authorities supra, applies with direct force to this question; and, as we have stated above, so long as a husband recognizes his duty and obligation to support his wife, and does so, the question of where she may be is of no consequence.

The case of Linares v. Linares, 93 Texas, 84, does not control this case. In the Linares Case the parties permanently separated by agreement in 1878, while they both resided in the Republic of Mexico, of which country we presume they were citizens. Nineteen years (1897) afterwards the husband moved to Texas, pur-·chased the property in controversy, and died in Texas in 1898. During the entire time from the separation in 1878 until the husband's death in 1898, the wife lived in Mexico. There was no evidence that after the separation the husband supported the wife or contributed anything to her support, or that the community relationship was regarded by them as continuing to exist. Because of the obvious difference in the facts of that case to those of the instant case, and the subsequent enactment of the statute next to be discussed, we do not think the rules there announced apply.

Aside from what has been said, we think the statutory grounds for divorce may be rightfully examined in determining whether or not the family status existed at the time the pavement and mechanic's liens arose. For certainly, except on some principle of estoppel, we ought not to hold that family status has ceased unless there at least exist grounds authorizing its dissolution. Revised Statutes, Article 4629, in so far as it could have any application to this case, reads as follows:

"Except where the husband or wife is insane, a divorce may be decreed in the following cases:

"1. Where either party is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable.

"2. In favor of the husband, where his wife shall have been taken in adultery, or where she shall have voluntarily left his bed and board for the space of three years with the intention of abandonment,

"3. In favor of the wife, where the husband shall have left her for three years with intention of abandonment, or where he shall have abandoned her and lived in adultery with another woman.

"4. Where a husband and wife have lived apart without co-habitation for as long as ten years."

There are no facts in the record which would authorize a divorce on any of the grounds specified in Subdivisions 1, 2, or 3 of the statute quoted above. There is absolutely no evidence that either party was guilty of excesses, cruel treatment, or outrages or ill treatment toward the other. There is no evidence that either was guilty of adultery. The evidence does not disclose whether the husband left the wife, or the wife the husband. Therefore, there is no evidence of separation with intention of abandonment on the part of either spouse. Rather the evidence discloses a conclusive presumption against such an abandonment, for there has been no divorce proceedings, and Dr. Vick as husband has continued to support his wife, and she in turn as a wife has continued to receive the support from her husband. We think the most which can be said is that there was a mutual separation, and if the separation was mutual, there could not be grounds for a divorce under Subdivisions 2 or 3 quoted above. 19 Corpus Juris, p. 64, Sec. 120; McGowen v. McGowen, 52 Texas, 657; Besch v. Besch, 27 Texas, 390, 391; Schouler on Marriage, Divorce and Separation (6th ed.) Vol. 2, Secs. 1614, 1615, 1626, 1629.

The rule is stated in Corpus Juris as follows:

"It is a firmly established principle of divorce law that separation by mutual consent does not constitute desertion. Hence it is a universal rule that there is no such desertion as warrants a divorce where, either expressly or by implication from the circumstances, the complainant consents to the original separation or its continuance, and that consent is not revoked. Thus, where a wife leaves her husband when directed by him, although his action resulted from a quarrel, he cannot afterward charge her with desertion; nor is the wife entitled to a divorce for desertion, under such circumstances, unless the husband's conduct was such as to justify her in leaving or directing him to leave. Further, what may have been desertion in its conception is terminated if the separation continues by mutual consent." 19 Corpus Juris, p. 64, Sec. 120.

In the case of McGowen v. McGowen, just cited, this Court declared:

"To constitute such voluntary separation with intention of abandonment, which would authorize a divorce under the statute, the plaintiff should have neither caused, procured, nor consented to the separation. It should not have been a separation by mutual consent, but should have been a separation with intent of abandonment, under circumstances which would have amounted to a voluntary desertion upon the part of the defendant, without the fault, procurement, or consent of plaintiff, and should have been continued for the length of time required by the statute. (Besch v. Besch, 27 Texas, 392; Hare v. Hare, 10 Texas, 355; Bishop on Mar. and Div., title Desertion.)" 52 Texas, 667, 668.

So, it follows that if the separation was mutual, there could not be a divorce under the abandonment sections of the statute referred to above, even though the separation continued for the space of three years. However, Subdivision 4, heretofore quoted, was added to the statutes in 1913, making a new ground for divorce. Vernon's Annotated Statutes, Article 4529, Acts of 1913, p. 183; Daugherty v. Daugherty, 198 S. W., 985, 986. This Subdivision authorizes a divorce "where a husband and wife have lived apart without cohabitation for as long as ten years." The effect of this statute is to make the mutual separation of a husband and wife for ten years ground for divorce. The effect of this character of law is stated in a leading authority as follows:

"The mutual separation of the parties for a specified period is made a ground of divorce in some states. Under these statutes the mutual consent of the parties to the original separation or to its continuance is necessary to entitle the applicant to a divorce, but if the separation has continued for the prescribed time, a divorce must be granted, although there is no proof that the parties intended the separation should be final." 19 Corpus Juris, p. 71, Sec. 143.

See also Daugherty v. Daugherty, supra; Landers v. Landers, 220 S. W., 359; Messick v. Messick, 177 Ky., 337, 197 S. W., 792; Cooke v. Cooke, 164 N. C., 272, 49 L. R. A. (N. S.) 1034, and cases cited in the Notes; Cole v. Cole, 27 Wis., 531. See also Schouler on Marriage, Divorce and Separation (6th ed.) Vol. 2, Sec. 1671.

In the last case cited the Supreme Court of Wisconsin correctly stated the public policy which causes the enactment of this type of statute, when it said:

"This law establishes a new ground of divorce, and is based upon the principle that where husband and wife have voluntarily lived

entirely separate for a period of five years, the interest of society and public morality, as well as the good of the parties themselves, will be best promoted by a dissolution of the marriage relation." 27 Wis., 531.

The history of the subject in our own State is apparent from an examination of the statutes in connection with the opinions of this Court. Voluntary abandonment by either spouse of the other for three years was made ground for divorce by the Act of 1876, but this Court, as we have shown, held that the abandonment provided for could not be by agreement. Then Subdivision 4 was added in 1913, for the purpose of meeting no doubt conditions of mutual separation to which the previous enactment did not apply, in instances where the Legislature deemed it of public interest as well as private right that the parties be permitted to obtain a divorce. But the Legislature required, before the accrual of the right of divorce, that there should be a living apart of the husband and wife "without cohabitation for as long as ten years." The effect of this statute is not only to make statutory grounds for divorce, but to declare the public policy of the State, as was well stated by the Supreme Court of Wisconsin. It amounts not only to a declaration of a public policy, but the enactment of a law which preserves the marital status of husband and wife with all its incidents in the absence of some recognized ground of estoppel until the expiration of the ten year period. In the case of mutual separation for a period of time short of ten years, the authority of the Court to grant a divorce is denied. If that power is denied, then, in the absence of facts which might give a court of equity the right to act, no court would have the power to decree the nonexistence of the marital status and the legal consequences which flow from it.

It follows from what has been said that since the mutual separation of Dr. Vick and his wife had not continued for ten years at the time it is claimed the liens of defendant in error arose, Dr. Vick was the head of a family, with the right to a homestead, and that since by his acts he had dedicated the property in controversy to homestead purposes, it was his homestead. The conclusion reached that Dr. Vick was the head of a family, and entitled to the benefits of the homestead exemption, finds support in the case of Ray v. Curry, 126 S. W., 26. In this case Curry brought suit against Ray to recover $26, and caused a writ of attachment to be levied on a cow and calf, the property of Ray. Ray pleaded that he was the head of a family, and claimed for that reason that the cow and

calf were exempt from forced sale. The Court of Civil Appeals held that Ray was the head of a family and entitled to the exemption claimed, although he had been separated from his wife over twelve months, and had made several efforts to secure a divorce from her. Other authorities also support the conclusion stated by us. Whitehead v. Tapp, 69 Mo., 415; Martin v. Martin, 112 S. C., 400, 100 S. E., 156; Gates v. Steele, 48 Ark., 539, 4 S. W., 54.

In the Martin case the sole question was whether or not A. W. Martin was the head of a family and entitled to claim a homestead in lands as against his judgment creditor, the Brookland Bank. The agreed facts showed that he was married a number of years previous, and that to him and his wife were born a number of children, all of whom, however, were of age and self-supporting at the time the controversy arose. None of them resided with him. He and his wife had been separated for fourteen years, and had not lived together during that time. There was no animosity or ill-feeling existing between them, but at about the time they separated they simply agreed, for reasons mutually satisfactory, to separate and live apart; but no immoral conduct on the part of either was the cause of the separation. He lived in the city of Columbia, and conducted a mercantile business for other persons. His wife lived in the town of Swansea, in the county of Lexington, and owned in her own right a valuable farm, consisting of 295 acres, and an improved lot in the town. She supported herself entirely from the profits of the plantation and property, and was not in any way dependent upon her husband for support, nor had he contributed anything to her support for a number of years, and was not doing so at the time of the action. He occasionally visited her and she occasionally visited him, but they did not live together as one family. On this state of facts the Supreme Court of South Carolina held that Martin was the head of a family and entitled to the homestead. The court in part said:

"The circuit court correctly held that Martin is the head of a family, and entitled to the homestead. The separation did not absolve him from the duty of supporting his wife, which is imposed upon him by the law. Gilliam v. Railway, 108 S. C., 195, 199, 93 S. E., 865. Nor did it change the marital relation. She is still his wife, and has the right to require him to perform his duty; and they may yet be reconciled and live together." Martin v. Martin, 100 S. E., 156, 157.

In the case of Whitehead v. Tapp, the Supreme Court of Missouri held that any man who has a wife is the head of a family within the meaning of the Homestead Act; that it does not matter that his wife may have deserted him and may be residing in another State, and that he may himself be living in improper relations with another woman. In deciding the case Chief Justice Sherwood said:

"The controlling question in this case is, whether Arnes was the head of a family. This point is established unmistakably by the evidence that he had a wife living in Quincy, Illinois, who had deserted him for another. This desertion, on the part of the wife, did not, however, sunder the existing marital relations, or make Arnes any the less a housekeeper, or head of a family, than he was prior to that occurrence."

In the case of Gates v. Steele, the Supreme Court of Arkansas held that a man is to be considered as head of a family, and entitled to a homestead, although his family may consist only of a wife who has deserted him. In discussing the question the court in part said:

"On the first point we have no difficulty. Steele was a married man, and the head of a family. He owed his wife and minor son protection and support. The wife, though living separate, might have returned to her duty at any moment. Stanley v. Snyder, 43 Ark., 429, goes much further; holding that a homestead right once acquired is not forfeited by the death of the wife, and the arrival at age and removal of the children. Aside from the authority of that case, and leaving out of view Steele's obligations to his infant son, it is hard to understand how the voluntary desertion of his wife could alter the legal status of Steele. The adjudged cases lend no support to such a view; but, on the contrary, it has been frequently decided that while a marriage *de jure* exists the husband is the head of a family, within the purview of the homestead law, although his family may consist only of a wife, who has left him. Brown v. Brown's Adm'r, 68 Mo., 388; Whitehead v. Tapp, 69 Mo., 415; Pardo v. Bittorf, 48 Mich., 275, 12 N. W. Rep., 164." Gates v. Steele, 4 S. W., 54.

What we have said renders any further consideration of the case unnecessary. Since the defendant in error, L. E. Whitham & Company, was the appellant in the Court of Civil Appeals, we have examined and considered all propositions urged by it in that court, and have concluded the action of the trial court with reference thereto was correct.

It follows from this opinion that the judgment of the Court of Civil Appeals in reversing and rendering the judgment of the trial court, in so far as it was in favor of the plaintiff in error, was erroneous, and to that extent should be reversed. The judgment of the Court of Civil Appeals, in so far as it reversed and rendered the trial court's decree entered in favor of plaintiff in error, Clara Schulz, is reversed, and judgment will be here rendered affirming in all respects the judgment of the District Court; and the judgment of the Court of Civil Appeals in so far as it affirmed the judgment of the District Court is affirmed.